## KINGMAN v. O'CALLAGHAN *et al.*

1.  The provisions of our statute are to be liberally construed with a view to effect its objects and to promote justice. Comp. Laws, § 4763.

2.  To use a house as a home is to act with regard to it in that manner; and when the head of a family, owning no other residence, purchases the site of an intended home, and begins the erection of a dwelling house thereon, with the intent by so doing to establish a place of abode for himself and family, which intention is followed by such occupancy as soon thereafter as the house, under the circumstances, can be completed, he is so acting, and the requirements of our statute have been answered, and the property is impressed with the homestead character before such house is completed and actually occupid by the family of the owner.

3.  A decision rendered by a trial court should not be disturbed on appeal

on the ground of improper admission or rejection of evidence, where it appears that no substantial wrong or miscarriage of justice has been thereby occasioned; and when a cause in equity has been tried to such court, and findings of fact have been made that are by competent evidence substantially sustained, and such findings justify the conclusions of law and the decision rendered thereon, this court will presume that improper testimony admitted on the trial was disregarded, and the admission thereof was error without prejudice.

(Syllabus by the Court.   Opinion filed Feb. 7, 1894.)

Appeal from circuit court, Lawrence county.   Hon CHAS. M. THOMAS, Judge.

Action for the foreclosure of a mortgage, and for other relief.   From the judgment rendered, plaintiff appeals.   Affirmed.

The facts are fully stated in the opinion.

*Wilson & McLaughlin* for appellant.

Actual occupation and residence are necessary to constitute a homestead.   Thompson on Homestead and exemptions, Sec. 241, etc; Smythe on Homestead and Exemptions, Sec. 165; Charles and Blow v. Lamberson, 1 Ia. 453; Hale v. Heaslip, 16 Ia. 451; Christie v. Dyer, 14 Ia. 438; Davis, Moody & Co. v. Kelly, 14 Ia. 524; Frooman v. Stewart, 5 Bissell, 20; Elston & Green v. Robinson, 32 Ia. 209; Rhodes, Pegram & Co. v. McCormack, 4 Ia. 368; Williams v. Sweatland, 10 Ia. 51; McCormick v. Wilcox, 25 Ill. 247; Tourville v. Pierson; 39 Ill. 447; Titman v. Moore, 43 Ill. 34; Fisher v. Cornell, 70 Ill. 216; Simon v. Lapham, 82 Ill. 213; Evans v. Calman, 52 N. W. 787, Holden v. Pinney, 6 Cal. 234; Stanton v. Hitchcock, 64 Mich. 317; Givens v. Dewey, 47 Ia. 414; 10 Minn. 156; Folsom v. Carll, 5 Minn. 333; Tillottson v. Millard, 7 Minn. 518; Gregg v. Boswick, 33 Cal. 220; Prescott v. Clayton, 45 Cal. 58.

While there are exceptions to this rule the exceptions only strengthen the reason for the rule.   A decided distinction arises in the cases as to the character of the lien sought to be enforced against an alleged homestead.   The distinction arises as to whether the lien attached by operation of the law or is the voluntary transfer or incumbrance of the premises without the

wife joining in any relinquishment. The courts have held and we think properly that where the lien arises by operation of the law the doctrine of intended occupancy can be applied. Smythe Homestead and Exemptions, 42; Neal v. Coe, 35 Ia. 409; Deville v. Wige, 64 Mich. 593; Reske v. Reske, 16 N. W. 895; Schofield v. Hopkins, 21 N. W. 259; Hanlon v. Pollard, 22 N. W. 767; Van Ratcliff v. Call, 10 S. W. 578; Monroe v. May, Weil & Co., 9 Kan. 466; Gilworth v. Cody, 21 Kan. 702; Association v. Watson, 25 Pac. 587; Edwards v. Fry, 9 Kan. 417. But where there was no actual occupancy the courts have never sustained a claim of homestead against the solemn act of the party holding the title to the property in making a lien or incumbrance. Homestead and Exemptions, Sec. 269; Moore v. Willis, 5 S. W. 675; Carey v. Tice, 6 Cal. 626; Kellersberger *v.* Kopp, 6 Cal. 564; Benedict v. Bunnell, 7 Cal. 246; Ricks v. McHenry and wife, 7 Cal. 89; Benson v. Aitken, 17 Cal. 164; Block v. Singley, 51 N. W. 704; Stanton v. Hitchcock, 31 N. W. 395.

*McLaughlin & McLaughlin,* for respondents.

To constitute a homestead actual personal occupancy is not in all cases necessary. The erection of a dwelling house for the purpose of and with the intention of making it a home, followed shortly after by occupancy will suffice. Noyes v. Lane, 48 N. W. 322; Irrigation Co. v. Schone, 50 N. W. 356; Myrick v. Bill, 37 N. W. 367; Reske v. Reske, 51 Mich. 541; 16 N. W. Rep. 895; Deville v. Widoe, 64 Mich. 593; 31 N. W. 369; Mills v. Hobbs, 76 Mich. 122, 42 N. W. 1084; Barber v. Roerbeck, 36 Mich. 399; Griffin v. Nichols, 51 Mich. 575; Bouchard v. Bourassa, 57 Mich. 8; Neal v. Coe, 35 Ia. 407; Cowgill v. Warrington, 66 Ia. 666; 24 N. W. 266; Crawford v. Richeson, 101 Ill. 351; Schofield v. Hopkins, 61 Wis. 370, 21 N. W. 259; Monroe v. May, 9 Kan. 466; Gilworth v. Cody, 21 Kan. 702; Association v. Watson, 25 Pac. 586; Hanlon v. Pollard, 7 Neb. 368; 22 N. W. 767; Miller v. Bennett, 12 S. W. 194; Blum v. Carter, 63 Ala. 235; Englehardt v. Yung Heirs, 75 Ala. 534; Morris v.

Willis, 5 S. W. 675; Van Ratcliff v. Call, 10 S. W. 578, 72 Tex. 491; Gardner v. Douglas, 64 Tex. 76; White v. Wadlington, 14 S. W. 226, 78 Tex. 159; Ellerman v. Wurtz, 14 S. W. 333; Dobkins v. Kuykendall, 81 Tex. 180, S. W. 743.

FULLER, J. The complaint in this case, after stating a cause of action for the foreclosure of a certain real estate mortgage dated July 21, 1889, executed and delivered by the defendants James O'Callaghan and Mary O'Callaghan to the plaintiff and appellant, Charles H. Kingman, to secure a promissory note for $4,627, of even date therewith, and concerning the foreclosure of which no defense is made, contains the following allegations: "(8) And the plaintiff further states that, as a further security for the indebtedness above described, the defendant James O'Callaghan, being the owner of a certain contract for the sale of certain real property made to him by defendant Elijah P. Fowler, duly assigned the same to this plaintiff on July 8, 1889, together with all his right, title, interest, claim and demand of, in, and to the real property therein described, with the appurtenances thereon, situated in the town of Whitewood, Lawrence county, South Dakota, and described as follows: 'Lots 4 and 5, in block G, in Oak Park addition to the town of Whitewood;' and authorized the plaintiff to receive a deed therefor. (9) And the plaintiff further states that said assignment of contract of sale was duly acknowledged and certified, so as to entitle it to be recorded, and that the same was afterwards duly recorded in the office of the register of deeds in and for the county of Lawrence, South Dakota, on the 17th day of January, 1890, in Book 67, page 591. (10) And plaintiff further states that before bringing this action he offered to pay to said Elijah P. Fowler the balance due on said contract of sale, made by him to said O'Callaghan, and assigned to plaintiff as aforesaid, to the end that he might get the deed thereto; but that said Fowler declined plaintiff's offer, and that the plaintiff is now ready and willing, and hereby does offer, to pay such balance for such deed." Plaintiff also demands that

the defendant Elijah P. Fowler be required to show to the court
the amount remaining due on his contract of sale to said O'Cal-
laghan, and that plaintiff be allowed to pay the same, and re-
ceive a deed for the premises described in said contract, and
that the same be foreclosed as a mortgage. To that portion of
the complaint quoted the defendants James O'Callaghan, Mary
O'Callaghan, and Elijah P. Fowler, answered as follows: "The
defendants James O'Callaghan, Mary O'Callaghan, and Elijah
P. Fowler, answering the complaint of the above named plain-
tiff for themselves, and for themselves only, aver as a defense
to the eighth, ninth, and tenth paragraphs in plaintiff's com-
plaint that on the 17th day of September, A. D.. 1887, the de-
fendant James O'Callaghan purchased from the defendant.
Elijah P. Fowler, for the sum of one hundred and fifty dollars,
lots four and five, (4 and 5,) in block nine, Oak Park addition
to the town of Whitewood, Lawrence county, in the then Terri-
tory of Dakota, now the State of South Dakota, for the pur-
pose of making a homestead of the same, and proceeded with
reasonable dilligence to erect a dwelling house thereon, to be
occupied by himself and family; that at that time, and ever
since, he was, and now is, a married man, and the head of a
family, and the defendant Mary O'Callaghan is his wife; that,
so soon as his dwelling house was completed on said lots, he
moved into it with his family, and has occupied the same ever
since as his and their homstead, and he has no other. That at
the time of making said purchase of said lots from the defend-
ant Elijah P. Fowler a contract was entered into between him
and the said defendant James O'Callaghan for the sale and pur-
chase of said lots, and the sum of thirty-seven dollars paid on
the purchase price, and the remainder of the purchase money
was to be paid in two installments in one and two years there-
after, which have been paid by defendant James O'Callaghan
to the defendant Elijah P. Fowler, and the former is now en-
titled to a deed therefor. That said defendant James O'Cal-
laghan had expended on said lots, in erecting his dwelling

house and other improvements thereon, not less than twenty-five hundred dollars. That at the time of the alleged assignment of said contract to the plaintiff, he had full knowledge that the defendant Mary O'Callaghan was the wife of the defendant James O'Callaghan; and that there was indorsed upon said contract a notice that, if the party making the assignment was married, both husband and wife should sign and acknowledge the same before it would be approved. That said Mary O'Callaghan did not sign or acknowledge the same, or have any knowledge of the alleged assignment until the bringing of this action; and that the said Elijah P. Fowler has not approved of or recognized the alleged assignment of said contract to the plaintiff, but has received all the purchase price of said lots from the defendant James O'Callaghan according to the terms of said contract, and is ready to execute and deliver to him a deed therefor. Defendants further aver as a defense to the cause of action stated in Paragraphs eight, nine, and ten in plaintiff's complaint that the alleged assignment of the contract mentioned was and is null and void, because the same is not signed and acknowledged by the defendant Mary O'Callaghan, wife of the defendant James O'Callaghan; and because the premises mentioned in the complaint were and are the homestead of said defendants James and Mary O'Callaghan, and they are the equitable owners of the same, and entitled to receive the legal title therefor from the defendant Elijah P. Fowler; that the claim of the plaintiff, Kingman, is a cloud upon the said title, and ought to be removed. Wherefore defendants pray that it may be adjudged and decreed (1) that the assignment of the contract mentioned in Paragraphs eight and nine in plaintiff's complaint was and is null and void; (2) that said plaintiff has no estate, right, title, or interest in or to lots four and five, block nine, Oak Park addition to the town of Whitewood, Lawrence county, State of South Dakota, and that the same was the homestead of the defendants James and Mary O'Callaghan when the alleged assignment was

made; (3) that defendants are entitled to recover their costs in this behalf expended; (4) and for such other and further relief as to the court shall seem meet." Upon the issue thus raised the case was tried to the court without a jury. The court found, in effect, as matters of fact, that at the time of making the contract for the lots involved in this suit the defendant James O'Callaghan was a marrid man, living with his wife, the defendant Mary O'Callaghan; that he stated at the time of making the purchase that his object and intention was to build a house thereon, and make a home for himself and family; that in the summer of 1889 he did cause to be erected on said lots a dwelling house of the value of about $2,000, and has ever since occupied the same with his wife as a homestead; that at the time of making the assignment of the contract to the plaintiff the defendant James O'Callaghan was in good faith erecting said dwelling house upon said property, with the intention of occupying the same as a home for himself and wife, and shortly thereafter, and as soon as the house was completed, he and his wife took up their residence thereon, and have ever since made the premises their home. As conclusions of law the court found, in effect, that the premises were, at the time of the execution of the assignment of the contract, impressed with the character of a homestead, and that said assignment made by the defendant James O'Callaghan to the plaintiff was void, because the instrument was not signed by Mary O'Callaghan, his wife. Judgment and decree was accordingly entered by the court, and the plaintiff appeals.

The assignments of error upon which appellant's counsel rely for reversal of this decision are principally addressed to the improper admission of evidence on the part of defendants, and the insufficiency of the evidence to justify the finding of fact and conclusions of law upon which the judgment and decree are based. We are disposed to believe that the court erred in permitting numerous witnesses, over the valid objection of plaintiff's counsel, to testify concerning the intention within the

breast of the defendant James O'Callaghan at the time he pur-
chased the lots and made the improvements thereon, but from
an examination of the records it appears to us that there was
competent evidence sufficient to require the findings of fact and
conclusions of law, and to support the judgment and decree en-
tered thereon. A decision rendered by a trial court should not
be disturbed on appeal on the ground of improper admission or
rejection of evidence, where it appears that no substantial
wrong or miscarriage of justice has been thereby occasioned; and
when a cause in equity has been tried to such court, and findings
of fact have been made that are by competent evidence substan-
tially sustained, and such findings justify the conclusions of
law and the decision rendered thereon, this court will presume
that improper testimony admitted on the trial was disregarded
and the admission thereof was error without prejudice. Can-
non v. Pratt, 99 U. S. 619; Broyles v. State, 47 Ind. 251; Horn-
buckle v. Stafford, 111 U. S. 389, 4 Sup. Ct. 215; Newcomer v.
Hutchings, 96 Ind. 119. In support of that portion of the com-
plaint controverted, plaintiff offered in evidence a duly acknowl-
edged assignment of the contract for the sale of lots 4 and 5,
block G, Oak Park addition to the town of Whitewood, executed
by James O'Callaghan, and being the contract described in the
complaint and answer herein. The substance of the testimony
on the part of the defendants which we regard material, and
which is practically undisputed, was that in the month of De-
cember, 1887, James O'Callaghan, a married man, entered into
a contract with Elijah P. Fowler for the purchase of the prop-
erty in dispute, paying at the time a portion of the contract
price, the balance of which he has subsequently paid in full.
Defendant has frequently stated that he bought the premises for
a home, and testified upon the trial that at the time of purchas-
ing the property it was his intention to use it for that purpose.
That during the month of April or May, 1889, the defendant
O'Callaghan placed lumber and other building material upon
the premises in controversy, and the erection of a residence

was immediately commenced, which was completed and occupied by the defendant and his wife early in the month of August of that year. That during the time the house was being built the defendant and his wife were occupying leased rooms, situated over the storeroom in which said defendant James O'Callaghan was engaged in the mercantile business. That he neither occupied nor owned any other home during said time. That when the defendant James O'Callaghan executed to the plaintiff an assignment of the contract for the lots on which his residence was being built he was indebted to the plaintiff in about the sum of $3,000 for groceries purchased at wholesale prices prior to the summer of 1888, and that said assignment was made on July 8, 1889, without the knowledge or consent of his wife, the defendant Mary O'Callaghan, and for the purpose of securing the payment of such indebtedness. That the plaintiff knew when the assignment was executed that O'Callaghan was building a dwelling house upon the premises. That said defendant Mary O'Callaghan neither joined in the execution of the assignment of the contract nor has she at any subsequent time ratified the transaction, but has frequently asserted, and now maintains, that the property was and is her home. The evidence also shows that the defendant and his wife have resided continuously in the house upon the premises since its completion in August, 1889, and built a barn, fenced the lots, and planted trees thereon.

The relation existing between the plaintiff, Kingman, and the defendant James O'Callaghan had been for a long time, and was at the time of the assignment, that of debtor and creditor; and it does not appear that the credit was extended upon the faith that the property in controversy was unoccupied, or would not be claimed as a homestead. In fact the plaintiff, before taking the assignment, visited the premises, and found that there was a residence being built thereon, which was nearly completed. The plaintiff was there to obtain security for a debt long past due, and to ascertain the financial condi-

tion of the defendant. It is fair to presume that he knew the
defendant owned no other house, and was residing in leased
rooms. It seems clear to us that the facts found by the court are
fully sustained by the evidence, and we are disposed to believe
that at the time of the assignment of the contract the premises
described therein constituted the home of the defendants James
and Mary O'Callaghan, and that the assignment was void and
of no effect.

Counsel for appellant reason that there is a marked dis-
tinction between a judicial sale and a voluntary incumbrance or
alienation by either the husband or wife of property claimed
as a homestead; but from a careful consideration of the proposi-
tion we are unable to see how the plaintiff is in a more favora-
ble position than he would have been had his claim been re-
duced to judgment, and the property sold on execution. Under
our statute the homestead must embrace the house used as a
home by the owner thereof, and may contain one or more lots,
with the buildings thereon. Comp. Laws, §§ 2454, 2455. Sec-
tion 2451 is as follows: "A conveyance or incumbrance by the
owner of such homestead shall be of no validity unless the hus-
band and wife, if the owner is married and both husband and
wife are residents of this state, concur in and sign the same
joint instrument." "The provisions of our statute are to be
liberally construed with a view to effect its objects and to pro-
mote justice." Comp. Laws, § 4763. With this rule and ob-
ject in view, let us consider the force and effect of our statute.
We are not aware that the phrase "used as a home," without
the accompanying word "occupied," is employed by the framers
of any other homestead law excepting Kansas, and we are led
to believe that our legislators intended to provide a law that
would extend the homestead immunity to the debtor and his
family in cases like the one under consideration. The object of
all homestead legislation is to protect the home, to furnish
shelter for the family, and to promote the interest and welfare
of society and the state by restricting, in consideration of the

benefits conferred, alienation or incumbrance by the owner's sole act and deed. In the end it is designated to benefit the creditor by encouraging the debtor to increase his efforts to liquidate his obligations. The enactment of the statute relating to the homestead immunity was evidently prompted by an enlightened public policy, and it is clearly obvious that our lawmakers intended to encourage persons charged with the support and maintenance of families to establish homes wherein the family might be sheltered and educated, and to some extent be protected from the misfortunes and vicissitudes which may overtake the most prudent, and reduce them to hopeless and abject poverty. To use a house as a home is to act with regard to it in that manner, and when the head of a family, owning no other residence, purchases the site of an intended home, and begins the erection of a dwelling house thereon, with the intent of by so doing to establish a place of abode for himself and family, which intention is followed by such occupancy as soon thereafter as the house, under the circumstances, can be completed, he is so acting, and the requirements of our statute have been answered, and the property is impressed with the homestead character before such house is completed, and actually occupied by the family of the owner. Axer v. Bassett. 63 Tex. 545; Reske v. Reske, 51 Mich. 541, 16 N. W. 895; Cowgill v. Warrington, 66 Iowa 666, 24 N. W. 266; Crawford v. Riceson, 101 Ill. 351; Blum v. Carter, 63 Ala. 235; Hanlon v. Pollard, 17, Neb. 368; 22 N. W. 967; Scofield v. Hopkins, 61 Wis. 370, 21 N. W. 259; Monroe v. May, 9 Kan. 466. Believing that our stat ute was meant to be effective in cases like the present, and there being no other question for consideration, further comment is unnecessary. The decree of the circuit court is affirmed.