O'NEILL, Appellant, v. BENNETT, et al., Respondents.

(181 N. W. 97.)

(File No. 4779.   Opinion filed January 29, 1921.)

1. Homesteads—Deed By Husband, Wife Refusing—Wife's Purchase Of Adjoining Land For Son, Residing Thereon But Not As Her Home, Whether Abandonment Of Homestead.

Where the husband contracted for and subsequently conveyed the homestead, the wife refusing to sign deed and claiming the land as her homestead, and being thereafter dispossessed by order of court, she then recording with Register of Deeds her claim of homestead, her husband thereafter executing and delivering to her a purported conveyance of the homestead, held, that her subsequent purchase of adjoining land for her son and her superintendency of the completion of a dwelling house thereon, and (while still so ousted) she with the family moving into said house and occupying it as a dwelling until time of trial, did not constitute an abandonment of the homestead; her sojourning at the son's residence being only temporary and until a suitable dwelling could be erected on the homestead land.

2. Same—Leaving Former Home, Occupying Village House, Sons Fencing Alleged Homestead, Erecting Stable, Chicken House, With Crude House Furniture, Working, Cropping, Land, Eating Luncheon At Farm, Occasional "Bunking" At Night, Mother Claimant Non-Resident On Farm, Whether A Homestead— ·Purchase Of Adjoining Farm For Son, Residing Thereon, Non-Evidence Of Abandonment.

Where the wife, claimant of the homestead farm in question, and her husband left their home in a city and moved into a rented house in a village near said land; her two sons going to the farm, fencing and cross-fencing it, erecting a small stable and a smaller chicken house or hog barn, broke up and cropped the land, they continuing to live in the village but usually ate in the chicken house lunches prepared and brought to them by

the mother, there being some crude furniture in the chicken house including stove and a "bunk," one or more of the sons, but not the mother, occasionally remaining there over night; the land in question having been purchased with the intention of moving onto it with husband's family and making it his permanent home; the boys, after said crop year, having entered the military service of the government, the father continuing to farm the land, but owing to war conditions and absence of the sons a dwelling house was not erected although planned for; **held,** that the farm constituted a homestead of the husband and wife; that said acts, together with the declarations of the wife and her husband of their intention to make their home on the land were sufficient to impress it with homestead character; nor did the fact that the wife purchased an adjoining farm for her son and superintended construction of a dwelling house thereon, and after its completion and after she had been ousted from the land in controversy, she with the family moved into said house and occupied it as a dwelling to time of trial of suit, amount to abandonment of the farm homestead; this in absence of intent to abandon such homestead and adopt another.

3.   **Same—Husband's Declarations Re Abandonment, His Conveyance, Immateriality As Affecting Wife's Right, Non-Estoppel Re Wife—Homestead Law, Purpose of Re Non-Alienation By Either Spouse.**

   A husband's repeated declarations of intent to abandon the homestead right on the land in question, likewise his attempted conveyance of the land to a third party, was immaterial as affecting the wife's right to the homestead; the express purpose of the homestead law being to make it impossible for husband, or wife, if title thereto is vested in her, to alienate or otherwise dispose of homestead without concurrence of the other spouse; construing Sec. 463, Code 1919.

Appeal from Circuit Court, Sanborn County.   HON. FRANK B. SMITH, Judge.

Action by Annie L. O'Neill, against Joseph Bennett and others, to set aside a deed of an alleged homestead by plaintiff's husband, and for other relief; defendants setting up adverse claims and praying for determination thereof and for injunctive relief.   From a judgment for defendants, and from an order denying a new trial, plaintiff appeals.   Reversed.

   *J. E. Whiting,* and *H. G. Giddings,* for Appellant.

   *T. J. Spangler,* for Respondents.

   (2)   To point two, Appellant cited: Kingman v. O'Callag-

han 4 S. D. 628; Floete Lumber Company v. Hodges 32 S. D. 557; Warner v. Hopkins, (S. D.) 176 N. W. 746; 21 Cyc. 475.

Respeondents cited: Laws of 1891, Ch. 77, Sec. 1; Rev. Code, 1903, Sec. 3219; Rev. Code, 1919, Sec. 451.

(3) To point three, Appellant cited: Comp. Laws, Sec. 3228; Bloomer v. Albright (Neb.) 89 N. W. 809.

POLLEY, P. J. [1, 2] The only question presented on this appeal is whether certain conduct on the part of the appellant constituted an abandonment of her homestead right in a quarter section of land near the town of Letcher in Sanborn county. Prior to and during the year of 1916 appellant, with her husband, Robert O'Neill, and their family, consisting of two grown sons and a grown daughter, resided in a home owned by Robert O'Neill, in Yankton county. About the 1st of March, 1916, Robert O'Neill purchased the land in question, herein referred to as the McEwen land, with the intention of moving onto it with his family and making it his permanent home. At the time of the purchase the land was wholly unimproved. In the spring of 1917 the family left their home in Yankton county and moved into a rented house in Letcher. Robert O'Neill and the two sons went to work on the land. They fenced it and cross-fenced it. They erected two small buildings, one of which was intended for a barn or stable and the other, a smaller building, suitable for a chicken house or hog barn. They broke up the land and put in a crop. They continued to live in Letcher, but usually ate their lunches, which were prepared and brought out to them by plaintiff, in the smaller of the two buildings above mentioned. There was some crude furniture in this building, including a stove and bed, or "bunk," as they called it, and occasionally some of them stayed there overnight. Plaintiff, herself, however, never stayed overnight until after this controversy arose. During the year 1917 both of the boys entered the service of the United States government, one in the army, and the other in the navy, and neither of them returned until after the signing of the Armistice. Robert O'Neill continued to farm the land throught the years of 1917 and 1918. At the time he purchased the material for the buildings above mentioned, the matter of building a dwelling house on the land was planned and talked

over, but, owing to the war conditions and the absence of the sons, no further steps were then taken.

[1]    On the 26th day of October, 1918, Robert O'Neill, without the consent of plaintiff, entered into a contract with the defendant Johnson for the sale of the land and accepted a payment on the purchase price. Plaintiff, claiming the land as her homestead, refused to sign the contract and objected to having the place sold. On March 10, 1919, Robert O'Neill executed and, delivered to defendant Johnson a deed purporting to convey to him the title to the property. Plaintiff refused to sign this deed and, still claiming the land as her homestead she tried to hold possession of it by force, but was dispossessed by order of the court. On the 10th day of March she filed for record in the office of the register of deeds a notice that she claimed this land as her homestead; and on the 20th day of March Robert O'Neill executed and delivered to plaintiff a deed purporting to convey the land to her.

To prove that plaintiff had abandoned her homestead right in the land, defendant showed that, shortly after Robert O'Niell entered into the contract for the sale of the land, plaintiff purchased an adjoining quarter section of land known as the "Ryan" land, on which a suitable dwelling house was in course of construction; that after the purchase she made some changes in the interior of the building and gave directions as to the manner of finish. After this house was completed and after plaintiff had been ousted from the McEwen land, she, with the family, moved into the said house and occupied it as a dwelling, and was so occupying it at the time of the trial of this action.

Plaintiff contends that she purchased this latter place for the purpose of providing a home for one of her sons, and that she did not intend to make it her homestead or to occupy it longer than until a suitable dwelling could be erected on the McEwen land. In this contention she is corroborated by an abundance of competent testimony. Mr. Ryan, the party from whom she made the purchase, testified that, when she was negotiating for the land, both she and her husband stated that she was purchasing it for their son George, and this same witness testified that plaintiff's son George had already approached him on the subject of the purchase of this same piece of land.

[2]    The intention of the plaintiff and her husband to make

the McEwen land their homestead, as evidenced by the purchase thereof, the improvements made thereon, the use to which the land was put by plaintiff and her family, together with the declarations of plaintiff and her husband of their intention to make their home on the land, were sufficient to impress it with a homestead character; and the fact that plaintiff purchased another piece of land and superintended the construction of a dwelling house thereon and later moved into and occupied the same as a dwelling, under the circumstances shown here, does not, in the absence of an intent to abandon such homestead and adopt· another, amount to such abandonment.    Kingman v. O'Callaghan, 4 S. D. 628, 57 N. W. 912; Lumber Co. v. Hodges, 32 S. D. 557, 143 N. W. 949.    See, also, Jensen v. Griffin, 32 S. D. 613, 144 N. W. 119, 50 L. R. A. (N. S.) 1128, and note B. Burkhardt v. Walker & Son, 102 Am. St. Rep. 386.

[3] A considerable volume of testimony was admitted to the effect that plaintiff's husband, by repeated declarations and by his conduct over a period of several months, had evinced an intent to abandon the homestead right on the land in question. This testimony was wholly immaterial in this case.    So far as he is concerned, his deed whereby he attempted to convey the land to defendant Johnson was sufficient evidence of his intent and willingness to abandon the homestead, but nothing he is shown to have said or done was competent to show an abandonment, or an intention to abandon, such homestead by his wife nor to estop her from claiming the land as her homestead. If, by any act of his, the husband could alienate the homestead or deprive his wife of her homestead right therein, then he could, by the mere act of executing a deed of conveyance, thwart the homestead law at will.    In fact, the homestead law was passed for the express purpose of making it impossible for the husband, or the wife, if the title to the homestead is vested in her, to alienate or otherwise dispose of the homestead without the concurrence of the other spouse.    Section 463, Code 1919.

Upon the undisputed facts as they appear in this record, the findings and judgment should have been in favor of the plaintiff.

The judgment appealed from is reversed.