Rodger W. GROSS, Valerie (Gross) Nordhus, and Diana Kay Thoen, Plaintiffs and Appellees,

v.

Betty Ann GROSS, Defendant and Appellant.

No. 17824.

Supreme Court of South Dakota.

Considered on Briefs Sept. 1, 1992.

Decided Oct. 28, 1992.

Allen J. Eide of Gribbin, Burns & Eide, Watertown, for plaintiffs and appellees.

Timothy J. Cummings of Green, Schulz, Roby & Oviatt, Watertown, for defendant and appellant.

---

1. The property, lots 14 thru 23, inclusive, in Block 1 of Davlin's Addition to Watertown, in-

MILLER, Chief Justice.

This is an appeal by Betty Gross from the circuit court's Amended Summary Judgment granting plaintiffs possession of certain properties which they held in joint tenancy with their deceased father, and denying defendant possession under her claim of homestead. We affirm.

FACTS

The following dates are relevant to this appeal:

(1) April 13, 1976—William Gross deeded the property in question[1] to his son Rodger and daughter-in-law Karen Gross as joint tenants. William was paid $9,000, the fair market value of the property at that time. Rodger and his wife also loaned William about $4,000, which William subsequently repaid. The deed was properly recorded and included a warranty that the property was "not then, nor ever had been, the homestead of [William] or of any member of his family."

(2) May 22, 1978—William married Betty Gross, his second wife. With Rodger's permission, they began to live in the residence on the piece of property. Though not critical to this appeal, a fair reading of the record would indicate they lived there rent free.

(3) July 18, 1986—Rodger and Karen Gross deeded the property, without consideration, to William Gross and all his children, including Rodger, as joint tenants. This transfer took place because "Rodger wanted William to have a place to live for the rest of his life and to be certain that upon his death, the premises would belong to Rodger and his siblings." William and Betty continued to live in the residence under the circumstances already noted.

(4) November 20, 1986—William died. His wife Betty continued to live in the residence.

(5) September 11, 1991—This action was started by the surviving joint tenant

cludes a residence.

siblings (appellees) seeking possession of the property.

(6) October 11, 1991—Betty filed an Answer and Counterclaim asserting a right to possession under a claim of homestead.[2]

Both parties moved for summary judgment. Plaintiffs' motion on the issue of possession was granted and Betty Gross appeals.

## DISCUSSION

The standard by which we review a grant or denial of summary judgment is clear: (1) The evidence must be viewed most favorable to the nonmoving party. (2) The burden of proof is upon the movant to clearly show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. (3) Though the purpose of the rule is to secure a just, speedy and inexpensive determination of the action, it was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists. (4) A surmise that a party will not prevail upon trial is not a sufficient basis to grant the motion on issues which are not shown to be sham, frivolous or so unsubstantial that it is obvious it would be futile to try them. (5) Summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant. (6) Where, however, no genuine issue of fact exists it is looked upon with favor and is particularly adaptable to expose sham claims and defenses.

*State Dept. of Rev. v. Thiewes*, 448 N.W.2d 1, 2 (S.D.1989); *First Western Bank v. Livestock Yards Co.*, 444 N.W.2d 387, 389 (S.D.1989); *Pickering v. Pickering*, 434 N.W.2d 758, 760 (S.D.1989); *Ruane v. Murray*, 380 N.W.2d 362, 363 (S.D.1986); *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). "Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 837 (S.D. 1990); *Pickering*, 434 N.W.2d at 760.

This case presents an issue of first impression in this state: Whether joint tenants of real property have a greater claim to possession of real property than does the spouse of a deceased joint tenant who asserts a right to possess the real property under a claim of homestead. The cases cited by the parties which involve tenants in common or tenants by the entireties, provide limited assistance, as we are concerned with joint tenants.[3]

The South Dakota Constitution, art. XXI, § 4, reads:

The right of the *debtor* to enjoy the comforts and necessaries of life shall be recognized by wholesome laws exempting from forced sale a homestead, the value of which shall be limited and defined by law, to all heads of families, and a reasonable amount of personal proper-

---

**2.** Additional counterclaims, alleging intentional infliction of emotional distress against the joint tenants and claiming an entitlement to various setoffs, were not addressed in the Amended Summary Judgment and are not before us on appeal.

**3.** The parties have referred this Court to *Ostyn v. Olympic,* 455 So.2d 1137 (Fla.Ct.App.1984). That court was also presented with the question of whether a nonspouse surviving joint tenant prevailed over the claim of a homestead exemption in a marital home which was jointly owned by the head of a family and a person other than his or her spouse. That court applied the reasoning of a previous Florida decision relating to tenants by the entireties to conclude that upon the death of defendant's spouse, "there was no property interest then owned by him to which a homestead interest could attach for the benefit of the [spouse]." *Id.* at 1138.

We note that *Ostyn* was decided in the presence of Florida's statutory provisions which state that property owned as tenants by the entirety can not be homestead property, Fla. Stat.Ann. § 732.401(2) (West 1976), and at a time when Florida's interpretation of "head of household" in Fla. Const. art. 10, § 4, (since amended) concerning homestead exemptions, varied from this Court's interpretation of similar South Dakota constitutional homestead provisions.

ty, the kind and value of which to be fixed by general laws. (Emphasis added.)

"The homestead right depends entirely upon constitutional and statutory provisions that create them...." *State ex rel. Bottum v. Knudtson,* 65 S.D. 547, 549, 276 N.W. 150, 151 (1937).[4] "The object of all homestead legislation is to protect the home, to furnish shelter for the family, and to promote the interest and welfare of society and the state by restricting, in consideration of the benefits conferred, alienation or encumbrance by the owner's sole act and deed." *Kingman v. O'Callaghan,* 4 S.D. 628, 637–38, 57 N.W. 912, 915 (1894).

This Court addressed the nature of the homestead interest in *Bailly v. Farmers' State Bank of Sisseton,* 35 S.D. 122, 150 N.W. 942 (1915). There, this Court said:

> The land in which the owner has a homestead interest may be conveyed by deed or pass by will, or under the statutes of succession. But the homestead interest does not pass as an incident to the land; and, if the party acquiring such property becomes vested with a homestead interest founded on the title so obtained, it vests by reason of possession and use and occupancy as a homestead, under the general statute. The source of the title is immaterial.

. . . .

> [T]he Legislature, in effect, has said that neither the deceased spouse nor the adult heirs shall deprive the surviving spouse of a homestead right in what had formerly been the family homestead. Yet it leaves to the surviving spouse the power to determine whether or not such homestead right shall be retained or abandoned.

*Bailly,* 35 S.D. at 128, 150 N.W. at 944. Whether a homestead has been created "depend[s] largely upon the intent of the parties." *Harter v. Davison,* 53 S.D. 399, 400, 220 N.W. 862, 863 (1928).

This Court has noted that one "purpose of the homestead exemption is, of course, to provide the security of a home to a family against the claims of creditors." *Speck v. Anderson,* 318 N.W.2d 339, 343 (S.D.1982); S.D. Const. art. XXI, § 4; SDCL 43–31–15.[5] However, these and the other authorities cited by the parties which relate to debtor/creditor relations, are of limited assistance to this court as we are not concerned with a debtor/creditor situation.

This Court has also noted that "the homestead law was passed for the express purpose of making it impossible for the husband, or the wife, if the title to the homestead is vested in her, to alienate or otherwise dispose of the homestead without the concurrence of the other spouse." *O'Neill v. Bennett,* 43 S.D. 569, 573, 181 N.W. 97, 99 (1921); SDCL 43–31–9.[6]

The homestead laws of this state are intended to prevent one spouse, in life or in death, from unilaterally depriving the other spouse of a homestead. Several years before marrying Betty, William sold this property at fair market value to his son and daughter-in-law, disclaiming the property as a homestead. Later, as husband and wife, they continued to live on this property, although neither had ownership interests in the property. Further, William had no part in the process of re-acquiring an interest in the property many years later.

"Upon the death of either husband or wife, the survivor may continue to possess

---

**4.** "The homestead may contain one or more lots or tracts of land with the buildings thereon...." SDCL 43–31–3. However, if the property is located "within a town plat the homestead must not exceed one acre in extent...." SDCL 43–31–4. The record does not reflect whether the area of these ten lots exceeds one acre.

**5.** SDCL 43–31–15 states in relevant part: "Such homestead shall ... be held exempt from any antecedent debt of the parent...."

**6.** SDCL 43–31–9 states in relevant part: "The owner may from time to time change the limits of the homestead ... entirely; but ... no such change of the entire homestead made without the concurrence of the husband or wife shall affect his or her rights or those of the children."

and occupy the whole homestead *until it is otherwise disposed of according to law....*" SDCL 43–31–13 (emphasis added). William did nothing "to alienate or otherwise dispose of the homestead[.]" *O'Neill,* 43 S.D. at 573, 181 N.W. at 99. Further, ownership of the property was transferred by operation of law to the surviving joint tenants upon William's death. The homestead exemption is "temporary and exists only so long as the conditions prevail under which it was allowed by the homestead law." *In re Estate of Mathison,* 468 N.W.2d 400, 403 (S.D.1991). Betty Gross has no homestead right of possession in this property. The trial court's Amended Summary Judgment is therefore affirmed.

WUEST, HENDERSON, SABERS and AMUNDSON, JJ., concur.