## MEDLINKA et al v. DOWNING et al.

### SUPREME COURT, GALVESTON TERM, 1883.

*Community Property—Presumption.*—The fact that part of the purchase money for land purchased by the husband during the life of the first wife was paid during the life of his second wife is not sufficient evidence that the money so paid was the community property of the husband and the second wife. If the money was paid soon after the second marriage no presumption would arise that the money was not the separate property of the husband.

*Homestead—Abandonment in Part.*—When there is a fixed intention carried into execution to no longer use for the purposes of a home, nor as a place to exercise the calling or business of a head of

a family, a portion of the property, and to appropriate the same to some purposes other than that contemplated by the constitution, if the same is done in good faith parties may be permitted to abandon a part of that which may have been homestead, as absolutely and clearly as they might abandon the whole property by ceasing to use and never intending again to use the property for the purposes for which the exemption is given.

*Same—Mortgage.*—A lien, however, given upon property which in fact is homestead at the time the lien is given, is invalid, although there may be an intention, even evidenced by a designation in writing, of less than is actually used at the time as the home, to make the homestead not to embrace the property upon which the lien is given.

Appeal from Harris county.    Opinion by Stayton, J.

The land in controversy was purchased by Anton Medlinka in 1853, during the life of his first wife, who died in that year. He married the mother of the intervenor, C. B. P. Medlinka, in 1854, and the fact that a portion of the purchase money for the land was paid during the life of the mother of the intervenor, is not sufficient evidence that the money so paid was community property of Anton Medlinka and his second wife. The time of that payment is not shown, and it may have been paid soon after that marriage. If so, no presumption would arise that the money was not the separate property of Anton Medlinka.

In 1857 he went north and remained until 1860, during which time the property seems to have been in the care of John Kuhlman, who held possession of it until 1868. The mother of the intervenor died in 1857, and the residue of the purchase money was paid by Kuhlman, and was settled with him through the rent of the property while in his possession. These facts do not show that any of the community estate of the mother of the intervenor was used to pay a part of he purchase money. Hence, it is not shown that he has any interest in or charge upon the property, and the court did not err in so adjudging.

That all of the property covered by the trust deed may have been, from its situation and use, at one time a part of the homestead, is most probably true; but at the time the deed of trust was given the evidence tends to show that the east end of the property was not used for homestead pur-

poses; and the very purpose for which the money was borrowed was to erect upon that part of the property some tenement houses for rent.

The subsequent acts of Medlinka show that the purpose was real.

From the evidence the court found "that the loan of money was in good faith, and at the date of the loan the homestead of defendants was defined by themselves as described in the trust deed, and that the object of so defining it, was to entirely separate their homestead and to utilize the balance of the block; and furthermore that this was done, not with the purpose of evading the constitutional provision touching encumbering the homestead, but was a *bona fide* fixing of the limits of their homestead, and an abandonment of any homestead interest in any part of the block, save that defined in the trust deed, and that so fixing and defining the yard to be the limits of their homestead. All the balance of the block was not a part of their homestead."

"That having thus limited and defined their homestead, and there being reserved a homestead for the family upon which all the buildings and conveniences in connection with their home was located, and this appearing to be a reasonable home place for defendant's, and not an evasion of the constitutional provision on the subject, that defendants are estopped, as against plaintiff, to claim homestead rights in any part of the block outside of that defined in the trust deed.'

The record bears evidence of a careful and laborious examination of the facts and law of the case by the judge who tried it, and the evidence as to the most of the property justified his conclusion.

Before the money was loaned and trust deed executed, the fence which separated the ground where the houses stood from the rest of the block, was erected, and had been for many years, and the next partition fence to the east of that, which enclosed the land which was in use as a garden at the time the trust deed was executed, had also been erected. That fence separated the part of the block upon which the tenement houses were erected from the rest of the block. The land east of that, at the time the trust deed was executed, does not seem to have been used for any homestead purpose; and so far as the evidence shows, the acts of the parties in designating the homestead, and in borrowing and

lending the money, and in giving and receiving the deed of trust, seem to have been done in good faith.

The question which arises in the case is : Can a husband and wife, one of them owning, in a town or city, a block of land upon which their homestead stands, all of the block not being actually used for homestead purposes but enclosed in one common enclosure, so designate a part of that block which is in actual use, as a homestead, as to confine the homestead to the part of the block so used, and to exclude that part of the block which is not so used, and not intended to be so used in the future, from the homestead character?

The object and purpose of the homestead exemption has been so often stated that there is no need to repeat it now ; and the constitution in no mistakable terms declares the uses to which it must be put in this language : "The same shall be used for the purpose of a home, or as a place to exercise the calling or business of the head of a family." (Constitution Art. 16, Sec. 51.)

Whatever property in a town or city is used for the designated purposes, the same at the time of its designation not exceeding the value prescribed by law, constitutes the homestead ; and no mortgage, trust deed, or other lien thereon can be valid.

The use of a block or more in a town or city, upon which the home is, in the manner and for the purposes for which such property is ordinarily used as a home, even though some of the uses may return nothing in a pecuniary way, and may be merely ornamental, or tending in some way to the comfort, convenience, or pleasure of the place as a home, will protect, as homestead, the entire property.

When, however, there is a fixed intention carried into execution to no longer use for the purposes of a home, nor as a place to exercise the calling or business of the head of the family, a portion of the property, and to appropriate the same to some purpose other than that contemplated by the constitution, we see no reason why, if the same is done in good faith, parties may not thus be permitted to abandon a part of that which may have been homestead, as absolutely and clearly as they might abandon the whole property by ceasing to use, and never intending again to use the property for the purposes for which the exemption is given.

If a person owning a block in a city, upon which his home

stands, should erect thereon, solely for the purpose of renting them to others, large and costly buildings to be used for mercantile or other purposes, and should so use them, would any one suppose that it was the intention of the constitution to continue the homestead character to such property so used? We think not, and that it would be a perversion of the spirit, letter and purposes of the constitution, under such circumstances, to continue the homestead protection to property so used.

A lien, however, given upon property which in fact is homestead at the time the lien is given, is invalid, although there may be an intention, even evidenced by a designation in writing, of less than is actually used at the time as the home, to make the homestead not embrace the property upon which the lien is given, as in this case.

At the time the deed of trust through which the defendant's in error claim was executed, the land between what is designated, in the plat of the block, made a part of the statement of facts in this case, as "second fence," and the fence between that and the houses, which on the plat is designated "first fence," which land on the plat is marked "garden" was used as a garden.

This was such use as fixed upon that property the homestead character at the time the deed of trust was given, and the mere description of something less as the homestead cannot withdraw from it that character, any more than a mere intention to abandon a homestead unaccompanied with removal therefrom, can operate as an abandonment.

The property between the two fences above designated, being in fact and in law, a part of the homestead at the time the trust deed was executed, it was invalid, and the defendants in error took no title to that property by the sale made under it.

In so far as the property between the fence marked "second fence," and indicated on the plat by a waved line, and the eastern line of the block, which includes all the land upon which the tenement houses were erected is concerned, we are of the opinion that the court did not err in holding that it had lost its homestead character at the time the deed of trust was executed.

At that time this part of the block had been severed from the rest of the block by a fence; was not used for any of

the purposes of a home, but had been appropriated to purposes foreign thereto, and has not been, so far as the record shows, used for any home purpose since.

That persons may abandon a part of that which has been homestead, in good faith, and appropriate it to uses which will deprive it of its homestead character, while the other part may continue to be homestead, we have no doubt.

If such a transaction were only colorable, or if done by the husband in fraud of the rights of the wife, or in any manner with intent, the property really remaining homestead, to evade the provision of the constitution, which prohibits the giving of liens upon the homestead, then the property would continue homestead, and a lien attempted to be given upon it void.

Such does not seem to have been this case. The judge who tried the case found to the contrary, in so far as all the property east of the fence marked "second fence" is concerned.

The cause having been tried without a jury, the judgment will be reversed, and as we are unable to here render judgment fixing the dividing line between the property the parties are respectively entitled to have, the cause will be remanded at the cost of W. W. and Beulah Downing, with instruction to the court below, after ascertaining, so that it can be properly described in the judgment, where the fence marked in the plat made a part of the record in this cause, "second fence," is situated, to adjudge to W. W. and Beulah Downing all that part of the land claimed in her petition, which is situated east of the line at which the fence marked "second fence," is found to be, and that all of the property west of that line claimed in the petition, be adjudged to Anton Medlinka, and that in all other respects the judgment be rendered as heretofore, and it is accordingly so ordered.