WM. AXER AND WIFE v. JEFFERSON BASSETT.

(Case No. 1676.)

1. CONSTITUTION — CONSTRUCTION.— The words which occur in the constitution in the homestead article, "used for the purposes of a home," refer to lots other than those on which the family reside, and whether they constitute a part of the homestead must depend on their use. Mere ownership will not constitute them a part of the home.

2. HOMESTEAD.— If a lot be continuously used in connection with the home residence, in such way as to contribute to the comfort of the home place, as if it be used for an inclosed pasture in which to keep the domestic animals of the family, that will constitute such use for purposes of a home as will invest it with homestead character, though it be disconnected and separated by streets from the home place proper.

ERROR from Washington. Tried below before the Hon. I. B. McFarland.

The defendant in error, Jefferson Bassett, as plaintiff below, brought this suit, which was in form an action of trespass to try title, in the district court, against the plaintiff in error, Wm. Axer, to recover a lot of ground in Brenham, consisting of about two acres. Mrs. Axer intervened, setting up a claim of homestead. Miss Kate Kinney, the other plaintiff in error, also intervened, claiming the superior title.

The residence lot and the lot in controversy are about one hundred yards apart, and are both within the corporate limits of the city of Brenham.

All the parties claimed under the defendant Wm. Axer, in whom title to the premises in controversy was vested by the deed of Kemp and wife, dated January 12, 1872.

Axer and wife were married prior to 1868. In 1868 Axer bought a vacant lot, comprising an acre and a half of ground, for $400, and during that year erected on it a dwelling-house, with suitable out-buildings; and he and his wife entered upon and occupied it, claiming it as their homestead, and had ever since continued so to use, occupy and claim it. The naked lot was worth no more than $400 when so designated, and was still worth approximately the same sum.

The residence lot was in the southern part of Brenham, and was and is used as follows:

The dwelling-house is on the north end of the lot. The stable and carriage-house, with horse lot and cow pen, are on the southeast corner, fronting on North street. The garden and orchard take up the greater portion of the center and south end of the lot. The eastern corner of the residence lot is about one hundred yards from the northernmost part of the premises in controversy. Brenham is a city of some six thousand inhabitants.

The lot in controversy was purchased by Axer January 12, 1872. It contains nearly two acres of ground. It is about one thousand yards from the court-house. North street terminates at its north-west corner. There is no other street but the thirty foot street or alley, which belongs to the adjoining lot owners, and was opened by them for their own convenience, but it is also used by the public.

When Axer bought the lot in controversy, in 1872, it was inclosed and in cultivation, and there were no buildings on it. He paid $500 for it, which was about its fair value. Shortly after his purchase he erected on it a building at a cost of some $1,500, which was first used, in 1872–73, as a tannery, and afterwards, in 1874–75, as a broom factory. Neither business proving profitable, they were abandoned, and the building was unoccupied down to 1877, when it was destroyed by fire.

No other building or improvement had been erected on the place since 1872, but the inclosure then existing remained substantially the same as when Axer purchased.

Ever since 1872 Axer and his wife have used the lots in controversy as a pasture and a rye and barley patch. They have usually kept two horses and two or more cows. They have owned no real estate other than their residence lot aforesaid and the lot in controversy.

The lot was mortgaged by Axer, twice in 1872, and twice again in 1875, Mrs. Axer not joining.

In July, 1880, Miss Kinney, who claimed a mortgage lien upon the premises, brought suit against Axer for her debt and foreclosure of lien. The homestead claim was not set up by Axer, and judgment was rendered by default. Miss Kinney purchased the premises at a sale under her *ven. ex.*, in January, 1881.

Bassett & Bassett recovered a judgment in 1877 against Axer, for $1,511, which was revived April 23, 1880. An abstract of this judgment was duly recorded and indexed June 3, 1880.

In July, 1880, the appellee, Jefferson Bassett, purchased the lot in controversy at execution sale, under the last recited judgment, for $50, of which amount a portion was applied to the payment of costs, and the balance credited on the judgment.

Axer had been insolvent continuously since 1872. He was present at the execution sale under the Bassett & Bassett judgment, and claimed the premises in controversy as his homestead, and forbade the sale.

Upon the foregoing facts, the court held that it was not shown that the lot in controversy constituted any part of the homestead, and that the execution sale passed the legal title in the premises to the purchaser, Jefferson Bassett, which was not affected by the judgment in the suit of Miss Kate Kinney against Axer, to which Bassett was not a party, and judgment was accordingly rendered for the defendant in error, Jefferson Bassett.

*J. T. Swearengen*, for plaintiff in error, cited: Constitution, art. XVI, sec. 51; Arto *v.* Maydole, 54 Tex., 244; Pryor *v.* Stone, 19 Tex., 371; Campbell *v.* Macmanus, 32 Tex., 442.

*Sayles & Bassett*, for defendant in error, cited: Chadwick *v.* Meredith, 40 Tex., 380; Iken *v.* Olenick, 42 Tex., 201; McDonald *v.* Campbell, 57 Tex., 614; Railroad Co. *v.* Winter, 44 Tex., 597; Andrews *v.* Hagadon, 54 Tex., 571; and Peregoy *v.* Kottwitz, 54 Tex., 497.

DELANY, J. COM. APP.— We will consider first the question whether the homestead claim of Axer and wife ought to be sustained; for if that is a valid claim, the whole case is at an end. Under all our state constitutions the homestead might consist of more lots than one; that is, the family might live on a lot or lots, and that fact of itself would make that lot or those lots the homestead.

But beyond this he may so use another piece of ground as to invest it with the homestead character. The term "lot" has no definite meaning as to the size of the piece of ground. It may be twenty feet by forty or it may be two acres. The words "used for the purposes of a home," which occur in our present constitution (art. 16, sec. 51), did not occur in those which preceded it. The words occurred very often in the discussions of the courts, but they generally referred to lots other than those on which the family lived.

The fact that a lot is made by a family a place of permanent residence constitutes that lot a home or homestead; that is, such residence is of itself a using of that lot for the purposes of a home. To say of that lot that it shall be the homestead, provided it is used for the purposes of a home, is equivalent to saying that it shall be the homestead provided it is the homestead. There appears, therefore, to be a slight incongruity in the language of the present constitution.

Whether or not it will lead to inconvenience, time will have to determine. But when we come to speak of lots other than that of the residence, the words "used for the purposes of a home" are very appropriate. For, as to these lots, their character, whether homestead or not, must be determined by their use. Thus it has long been held that the mere ownership of a vacant lot, unconnected with the residence lot, will not make it part of the homestead. Methery v. Walker, 17 Tex., 593.

Nor could a lot unconnected with the residence lot be made a part of the homestead by being used for the purpose of providing a revenue, even though that revenue were used for the support of the family. Evans v. Womack, 48 Tex., 230. But if the lot were constantly used in connection with the residence lot, and in such a way as to add materially to the convenience and comfort of the home, our opinion is that its separation from the residence lot would not necessarily divest it of its character as a part of the homestead. Now, this lot was a very short distance from the stable of the family. They had several domestic animals — cows, horses, etc.

Ever since 1872, when this lot was bought, it had been used by the family as a sort of pasture lot for these animals. We think this was such a use as would *prima facie* make it a part of the homestead. The fact that Axer placed on the lot a building, and used it for some years as a tannery, or a broom factory, would not, we think, alter the case.

· Our opinion is that the judgment should be reversed, and that such judgment should be rendered here as should have been rendered below; that is, judgment for the defendants Axer and wife.

REVERSED AND RENDERED.

[Opinion adopted March 20, 1885.]