### A. J. ANDERSON v. S. A. SESSIONS.

No. 856. Decided January 29, 1900.

**Urban Homestead—Garden on Detached Lots.**

The use of a town lot as a garden in which to raise fruits and vegetables for family consumption is sufficient to constitute it a part of the residence homestead, though detached therefrom and in another part of the town. (Pp. 287, 288.)

CERTIFICATE OF DISSENT from the Court of Civil Appeals for the Second District, in an appeal from Montague County.

*F. M. Brantley,* for appellant.—Under the claim of exemption set up by appellee it was incumbent on him to show that the land in question was being used by himself or his family for the purposes of a home at the time of the levy. The conclusion of the trial court that the land in question, at the time of the levy of the execution on it, was "being used for the purposes of a home" by appellee and his family and hence constituted part of his homestead and was exempt as such, was erroneous and not borne out by the facts; as it appeared that the tract in question was in no way connected with or appurtenant to appellant's home; that its use was in no way essential to the proper occupancy, use, or enjoyment by appellee or his family of his home;—the mere fact that the revenues or fruits derived from the tract may have been applied or contributed to the comfort or pleasure of the family would not make the tract a part of the home or render it exempt as such. Iken v. Olenick, 42 Texas, 195; Keith v. Hyndman, 57 Texas, 431; Evans v. Womack, 48 Texas, 230; Mullins v. Looke, 8 Texas Civ. App., 138.

*Graham & Turner,* for appellees.

The majority and dissenting opinions of the Court of Civil Appeals, sent up with the certificate of dissent herein, were as follows:

MAJORITY OPINION.

Filed May 20, 1899.

"HUNTER, ASSOCIATE JUSTICE.—This was a suit instituted in the District Court of Montague County, on the 28th day of June, 1898, by appellee against W. R. Pierson, constable of precinct No. 4, Montague

.County, and A. J. Anderson, appellant, to enjoin the sale by said constable of a tract of land situated in the town of Bowie, in said Montague County, under an execution issued out of the Justice Court of precinct No. 1, Tarrant County, upon a judgment rendered therein in favor of A. J. Anderson against S. A. Sessions. .The ground on which the sale was sought to be enjoined was that the property, consisting of about two acres, constituted part of the residence homestead of appellee and. his family, and as such was exempt from such sale; that while it was detached from the dwelling of appellee, yet by reason of its cultivation, use, etc., it constituted part of the residence homestead of appellee.

"Appellant Anderson and the constable answered by general demurrer and special exception, admitting the existence of the judgment in the Justice Court mentioned, as well as the issuance and levy of the execution mentioned therefrom on the property in question, but denying that the property levied upon was exempt or constituted any part of the homestead of appellee or his family. They further averred that appellee acquired the property in question simply for purposes of speculation, and so held the same at the .time of the levy in question, and not for the purpose of a homestead at all, and that the claim of appellee that the same constituted any part of his homestead was a mere pretense, a fraud, and a sham, sought to be asserted with the fraudulent intent of preventing the just seizure and subjecting of the property towards the satisfaction of his just debts.

. "The case was tried by the court without a jury, and judgment was rendered perpetuating the injunction, the court below finding that the lot in question was part of the residence homestead of appellee; and from this judgment this appeal is taken.

"The following are the facts as found by the district judge, and which we adopt:

" 'As to matters of fact I find that the defendant Anderson in the Justice Court of Tarrant County recovered judgment against plaintiff, and that the execution sought to be enjoined was issued upon said judgment and levied upon the premises in controversy as the property of plaintiff, as alleged in the plaintiff's petition.

" 'I also find that plaintiff is, and was at the time of such levy, a married man, the head of a family consisting of himself, his wife, and three children; that with his family he has continuously resided in Bowie, Montague County, Texas, on lot 8, block 48, of Stalling's addition to Bowie, which is 70 x 140 feet, owned by him for many years last past. The premises in controversy are also situated within the corporate limits of the said city of Bowie, from 800 to 1000 yards from the lot on which plaintiff resides. He purchased the premises in controversy in January, 1895, intending when he got able to do so to build upon it and move onto it with his family, and very soon after his purchase inclosed the same with a fence and planted a portion thereof in fruit trees, and grape and blackberry vines, and the next season planted the greater portion of the remainder in such trees and vines. That during

the year 1895 and for each year since, including the present year, he has cultivated said premises in garden vegetables exclusively for the use of himself and his family, carrying the vegetables and fruits raised thereon to the place of his residence to be eaten by his family. He has never sold any of the products raised on such premises, and no part of said premises has been used, since plaintiff purchased the same, for raising products for market, but solely for the table use of plaintiff and family, and no part of said premises has been rented out to any person. That since acquiring said premises plaintiff has not used any other piece of ground as a garden, and on said lot 8 where he resides he has no garden and no room for any.

" 'The premises in controversy consist of about two acres of ground, worth about $150, and these premises, together with said lot 8 on which plaintiff resides, are worth and have always been worth less than $5000.'

"To this we add another point from the statement of facts,—that the appellee's business or occupation was that of a drummer or traveling salesman, and had been for eight years previous to the levy, and the lot in question was not claimed as his business homestead, but as part of his residence homestead, and that the two lots were situated in different parts of the city altogether, the one in controversy having been acquired several years after the establishment of his home on the other.

"Upon the facts found by him, the learned district judge filed the following conclusion of law: 'From the foregoing findings of fact I conclude as a matter of law, that the premises in controversy at the time of the levy of said execution thereon constituted a part of the homestead of plaintiff and his family, being used for the purposes of a home, and hence that the same was exempt from such levy.'

"The contention of appellant is, (1) that the lot was not being used for the purposes of a home; that the products thereof, though used only by the family for their maintenance and pleasure, were not *necessary* to the use of the mansion or home, *as a home,* nor did they or the lot contribute to the proper use or enjoyment of such mansion or home, though they may have contributed to the support of the family; and (2) that the lot was not connected with or appurtenant to the residence lot, but was about half a mile distant therefrom; that its use was in no way *essential* to the proper occupancy, use, or enjoyment of the home by appellee or his family.

"We can not agree with appellant in his contentions. Our Constitution provides: 'The homestead in a city, town, or village shall consist of lot or lots, not to exceed in value five thousand dollars at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided that the same shall be used for the purposes of a home or as a place to exercise the calling or business of the head of the family.' Const. of 1876, art. 16, sec. 51.

"This provision does not require that the lots shall be connected with each other, or even that they shall be near to each other, but only that they must be within the city, town, or village limits. Nor does it re-

quire that they should be *necessary* or *essential* to the occupancy, use, or enjoyment of the mansion house, but only that they be used for the purposes of a home.

"The case of Iken v. Olenick, 42 Texas, 196, is relied on by appellant to show that the lot must be contiguous to the residence lot. But that decision was rendered in 1875, under the Constitution of 1869, which contained no such provision relating to the use of the lots for the purposes of a home as is contained in our present Constitution of 1876. The Constitution under which that decision was rendered provided for the exemption from forced sale as the homestead of 'any city, town, or village lot or lots not to exceed $5000 in value,' but that decision was made to turn on Worcester's definition of the word homestead,— 'The place of the house; a mansion house with the adjoining land;' and following this definition our Supreme Court as then constituted overruled a line of decisions running back for nearly twenty years which were more liberal to the family, as they allowed as part of the homestead the lot upon which the husband carried on his business to support his family, as well as all others occupied by the family, not exceeding $2000 in value, although disconnected and remote from the residence lot. Pryor v. Stone, 19 Texas, 373.

"In the case last cited, Chief Justice Hemphill, construing our Constitution of 1845, which exempted 'any town or city lot or lots, in value not to exceed two thousand dollars,' said: 'It allows any number of lots, not to exceed two thousand dollars, and it can not be material how many or how far or how near or remote from each other may be the lots occupied for the convenience of the family and for the prosecution of the business or employment of its head or members.'

"Thus the people of Texas understood their homestead laws for two decades, and seem to have been contented and happy, when the decision in Iken v. Olenick suddenly made its appearance in their reports, and in less than twelve months from the rendition thereof a convention of delegates from the people were met in Austin and had framed the present Constitution, in which, in our opinion, they in unmistakable terms framed a homestead law exactly in accord with Chief Justice Hemphill's decision, overruling, as it were, the decision in Iken v. Olenick and confirming that in Pryor v. Stone. So that now, whatever may have been Mr. Worcester's definition of the word homestead, the people of Texas have made a definition of their own, and have declared that the homestead in a city, town, or village shall consist of lot or lots, in whatever portion of the town situated, whether near to each other or remote, not to exceed in value $5000, provided they be used either for the purposes of a home or as a place to exercise the calling or business of the head of a family.

"Following the adoption of that Constitution came in 1881 the decision in Arto v. Maydole, 54 Texas, 247, where our Supreme Court, in construing the clause defining an urban homestead, said: 'The question is not whether any portion of this adjoining block may have been

a necessity or a mere convenience to the enjoyment of the homestead, but whether in fact it was a part of the homestead. If it was, the fact that it may have been used as an approach to the mansion or for the purpose of ornamentation or pleasure grounds only would not defeat it of the homestead protection.'

"In 1882 the case of Brooks v. Chatham, 57 Texas, 33, was decided, where the clause of the Constitution defining the rural homestead was construed. That clause provides that the country homestead 'shall consist of not more than 200 acres of land, which may be in one or more parcels, with the improvements thereon,' and the court held that the clause immediately following the definition of an urban homestead, to wit, 'provided the same shall be used for the purposes of a home,' applied to the parcels of land claimed as a rural homestead the same as it did to the lot or lots claimed as a city homestead; and it was further said by the distinguished jurist who wrote that opinion that the parcel claimed might be situated eight or ten miles from the home place, if its use was such as to designate it as part of the home.

"In 1883 the same court held in Medlenka v. Downing, 59 Texas, 40, that the use of a town or city lot for a garden 'fixed upon it the homestead character;' and this too in a case where the lot was separated by a fence and the homestead had been designated in writing for the purpose of securing a loan, excluding the garden, upon which, with other property, the mortgage was given.

"In 1884 the same court, in the case of Jacobs v. Hawkins, 63 Texas, 4, said: 'If there be an actual use of property as for a homestead purpose, although it be detached from the lot on which the residence or mansion house stands, then it is not necessary that some open assertion or claim to it as part of the homestead be made, otherwise than as such claim is evidenced by the use.'

"Following this decision, in the year 1885 the case of Axer v. Bassett, 63 Texas, 548, was decided, where the two-acre lot claimed as part of the urban homestead was 100 yards from the residence lot, but was used for a rye and barley patch and to pasture cows and horses on, and it was held to be part of the homestead because used for the purposes of the home.

"We think that the use of a lot for the purpose of raising garden vegetables, berries, and fruits for the family table is one of the uses to which home lots are usually devoted. It is a garden, as the term is understood among Texans, and a garden in a Texas town or village is considered as much a part of the home as the front yard or the back yard or the stables and horse lot, and the writers of our Constitution must have so understood it and intended it. Waggener v. Haskell, 35 S. W. Rep., 1. If the lot adjoined the residence lot, used as it is, though divided from it by a high wall or fence, would anyone contend that it was not a part of the homestead? Certainly not. And why would it be? Simply because it was used for the purposes of a home, and not because it was contiguous.

"Then if a garden is a home use,—one that would protect it if adjoining the residence lot, as held in the Medlenka case,—we can see no reason why the same use will not protect it though situated across the street, as in the Jacobs-Hawkins case, or across ten streets, or anywhere else in the town, city, or village. It might not be as convenient a homestead, thus scattered from suburb to suburb, but probably the best the poor drummer would be able to own. He might not be able to own the lot adjoining his residence to use for a garden, because of its great value for building purposes, but could buy one in the suburbs of the town larger and perhaps better adapted for a garden, and thus add a few comforts to his home. If play grounds and shady parks with graveled walks used only for pleasure or ornamentation are protected, because used for the purposes of a home, we think that a little garden spot, although in a distant suburb of the town, would not be an improper or an unreasonable addition to the homestead, where it is used for the purpose of supplying the home table with the necessaries and comforts of life;—for the children of the poor must eat, though they may not have much time to play.

"It is contended also that because when he bought the lot he intended to build a residence on it when he got able, and has since only used it as a garden, this would render it liable to execution. But we are also constrained to differ from this view. Both are homestead purposes, and shifting the uses of the lot from one homestead purpose to another does not constitute an abandonment nor deprive the lot of its homestead character. See Axer v. Bassett, supra.

"Finding no error in the judgment, it is affirmed."

### DISSENTING OPINION.

#### Filed May 20, 1899.

"Stephens, Associate Justice.—It is not pretended that the lot in controversy, consisting of about two acres and used as a garden for appellee's family, was exempt as a place to exercise his calling or business, which was 'that of a traveling man,' but the exemption is claimed upon the sole ground that the same was 'used for purposes of a home.'

"The case made by the undisputed evidence is this: About eight years before the trial appellee acquired a homestead in the southeastern part of the town of Bowie, upon a lot 70 by 140 feet, where he has ever since resided with his family, the improvements on this lot consisting of a dwelling-house, barn, cow-lot, etc. About five years later he purchased the two-acre lot in controversy in the northern part of the town, and distant a half mile or more from his residence, with the intention of building and moving on it 'when he got able to do so,' or when he could sell the place where he lived in the southeast part of the town. With this in view, he had it fenced and planted with fruit trees, grape vines, and blackberries. He also caused it to be cultivated in vegetables of various kinds each year thereafter, which were used by his

family 'in home consumption.' Both lots are situated within the corporate limits of Bowie, a town of 3500 or 4000 people, but in different parts of the town *altogether*. 'The territory intervening is cut up into streets and lots and blocks, and is pretty well built up with residences and settled up.'

"The Constitution of this State exempts the homestead of the family from execution, and provides that an urban homestead 'shall consist of a lot or lots not to exceed in value $5000, at the time of their designation as a homestead, without reference to the value of any improvements thereon, provided that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family.'

"In Waggener v. Haskell, 35 Southwestern Reporter, 1, it was held that this constitutional definition of the homestead was intended to settle the previous conflict of judicial construction upon that question, it having first been decided, as expressed in the opinion of Chief Justice Hemphill in Pryor v. Stone, 19 Texas, 371, that the homestead might include, besides the place of residence, 'a place where the head or members may pursue such business or avocation as may be necessary for the support and comfort of the family,' though remote from the place of residence; but in the opinion of Justice Moore in Iken v. Olenick, 42 Texas, 195, the exemption beyond the 'mansion house' was restricted to 'the land which, from its use, as well as its contiguity, it is to be supposed was intended to be exempted from the demands of creditors, as part and parcel of the land connected with and necessary for the use and enjoyment of the mansion house,' thus excluding the place of business, if not otherwise a part of the homestead.

"In this connection it may not be amiss to quote from Thompson on Homesteads and Exemptions, section 120, page 105, the following characteristic comment: 'We shall also see that the doctrine of the early Texas cases—that a man can have a homestead scattered all over a town, regardless of intervening streets, alleys, lots, or blocks—has been exploded in that State, denied in Kansas, and can not be regarded as sound law anywhere.'

"Says Justice Denman in Waggener v. Haskell, supra, referring to the above quotation from the Constitution: 'It will be observed that the first proviso includes (1) land used for the purposes of a home, as indicated in the opinion of Justice Moore; and (2) land used as a place to exercise the calling or business of the head of a family, as contended by Chief Justice Hemphill.'

"The plain meaning of the constitutional definition then is, that the lot or lots claimed to be exempt must, first of all, be *designated as the homestead,* either residence or business or both, and if, as in this case, only a residence homestead is claimed, the definition given by Judge Moore, and not that of Chief Justice Hemphill, should apply. It therefore seems to me that the lot in question, besides being acquired and designated for a different purpose, was not so situated and used

in connection with the 'mansion house' as to make it 'appendant to and part thereof,' it being entirely too remote from the residence for 'it to be supposed' that it 'was intended to be exempted from the demands of creditors, as part and parcel of the land connected with and necessary for the use and enjoyment of the mansion house.' It can not fairly be said in such case to have been used for the purposes of a home, however beneficial its use may have been to the family, and whatever might be the effect of such use were the lot in the vicinity of the 'mansion house,' so as to be appurtenant thereto.

"In my opinion, the separated lots in a town or city exempted by the Constitution as the place and for the purposes of the home should be situated at least approximately together, and not, as in this instance, a half mile apart and on opposite sides of the town—in totally different neighborhoods. It was this anomalous idea of a home 'scattered far and wide' which our Supreme Court repudiated in Iken v. Olenick, supra, the governing principle being thus further stated in that case: 'The visible occupation of the homestead, or mansion house, or lands adjoining or in actual use, as appendant to and part thereof, is notice to creditors and purchases dealing with the husband.'

"The correctness of that decision has never since been questioned, as it is undoubtedly sound and in line with the authorities everywhere, but the latest expression of our Supreme Court is to the effect that it has received constitutional sanction, though the Constitution went further and exempted, in addition, as the place of business, what was held not to be exempt in Iken v. Olenick as a part of the home premises. Waggener v. Haskell, supra; Thomp. on Homesteads and Exemp., sec. 127.

"What was said by Judge Stayton in Brooks v. Chatham, 57 Texas, 31, was with reference to a rural homestead, and it will be observed that the proviso above quoted from section 51, article 16, of the Constitution applies as well to the parcels of land in the country as to the lots of land in a town or city. That is, one or more parcels of the land constituting the homestead in the country, if not used for the purposes of a home, may still be exempt as the place to exercise the calling of the head of the family, that of farming and the like. Hence it is immaterial that such parcel or parcels may be remote from that upon which is situated the dwelling house and home of the family. The homesteader still gets the substantial benefit, it is true, of the doctrine of the early Texas cases which was repudiated in Iken v. Olenick, but it is under the constitutional provision exempting the place to exercise the calling or business of the head of the family, and not that exempting what is designated and used merely for the purposes of a home.

"As the business of a 'traveling man' or 'drummer' is of such nature as not to admit of a place for its exercise, he is without the pale of the provision exempting a place of business. His homestead exemption is not broader, therefore, than that covered by the definition in Iken v. Olenick, for he can only have what for the sake of convenience is termed

the residence homestead.   Nor does the law allow him two such home-steads, though in reality that seems to be what is claimed in this case; for the effect of the findings of fact, in my opinion, is that the lot in question, situated in the northern part of Bowie, was acquired and im-proved, not as a part of the existing homestead in the southeast part of the town, but to become a new and different homestead at an in-definite time in future, it being used in the meantime for just such purposes as a farm, orchard, or garden in the country would be used. That is, it was never designated by concurrent intention and use as a part of the already established homestead, but the use made of it in connection therewith was temporary merely.

"Upon both of these grounds I am constrained to dissent from the conclusion of the majority, and that, too, notwithstanding the pathetic appeal made in their opinion in behalf of the 'poor drummer.'  'The children of the poor must eat,' say they, to which, without dissenting from a proposition so humane and benevolent, I answer, let them be fed by him who is responsible for their existence in the world, and upon whom therefore naturally and justly devolves the duty, rather than by judicial construction at the expense of the creditor, who may, perchance, be also poor, with children of his own to feed.  If he is not equal to the task, and the 'poor man's burden' must be borne by strangers, then open wide the door of charity and let others besides the creditor in. But until the law provides for the 'poor drummer' some exemption in lieu of a place to exercise the business or calling of the head of the family, it is not within the province of the courts to make any such pro-vision merely because his children 'must eat.' "

GAINES, CHIEF JUSTICE.—This case comes to us upon a certificate of dissent.

The suit was brought by the appellee against one Pierson, as con-stable, and the appellant, as plaintiff in execution, to enjoin the sale of a certain lot in the town of Bowie, upon the ground that it was a part of his homestead and therefore exempt from forced sale.

The case was tried without a jury and the trial judge found the fol-lowing facts:

"As to matters of fact, I find that the defendant Anderson in the Justice Court of Tarrant County recovered judgment against the plain-tiff, and that the execution sought to be enjoined was issued upon said judgment and levied upon the premises in controversy as the property of plaintiff, as alleged in the plaintiff's petition.

"I also find that plaintiff is, and was at the time of such levy, a mar-ried man, the head of a family consisting of himself, his wife, and three children; that with his family he has continuously resided in Bowie, Mon-tague County, Texas, on lot 8, block 48, of Stalling's addition to Bowie, which is 70 x 140 feet, owned by him for many years last past.   The premises in controversy are also situated within the corporate limits of said city of Bowie, from 800 to 1000 yards from the lot on which

plaintiff resides. He purchased the premises in controversy in January, 1895, intending, when he got able to do so, to build upon it and move onto it with his family, and very soon after his purchase inclosed the same with a fence and planted a portion thereof in fruit trees, and grape and blackberry vines, and the next season planted the greater portion of the remainder in such trees and vines. That during the year 1895 and for each year since, including the present year, he has cultivated said premises in garden vegetables exclusively for the use of himself and his family, carying the vegetables and fruits raised thereon to the place of his residence to be eaten by his family. He has never sold any of the products raised on such premises, and no part of said premises has been used, since plaintiff purchased the same, for raising products for market, but solely for the table use of plaintiff and family, and no part of said premises has been rented out to any person. That since acquiring said premises plaintiff has not used any other piece of ground as a garden, and on said lot 8 where he resides he has no garden and no room for any.

"The premises in controversy consist of about two acres of ground, worth about $150, and these premises together with said lot 8 on which plaintiff resides, are worth and have always been worth less than $5000."

Upon the facts so found, the court held the lot in controversy exempt and gave judgment for the plaintiff.

The Court of Civil Appeals adopted the findings of the court below and affirmed its judgment,—one of the judges dissenting. The question whether, under the Constitution and laws of our State, the lot in controversy is to be deemed a part of appellee's homestead and therefore not subject to be sold under execution, is ably and exhaustively discussed both in the opinion of the court and in that of the dissenting judge. We therefore deem it sufficient to say that we concur in the view of the majority and are of opinion that the point of dissent was correctly decided by the court. Accordingly, our opinion will be so certified.

*Affirmed.*