FIRST NAT. BANK OF McGREGOR v. RICE–STIX DRY GOODS CO. et al. (No. 6061.)

(Court of Civil Appeals of Texas. Austin. March 19, 1919.)

1. HOMESTEAD ☞70—SEPARATE PARCELS.

Under Const. art. 16, § 51, providing that a city homestead shall consist of lot or lots not to exceed $5,000 in value, used for a home or place of business, a block of land not improved, but inclosed by fence, and used occasionally, by the owner, who resided on property across the street, as a pasture and for agriculture, the whole property not exceeding the value named, constituted a part of the owner's homestead.

2. HOMESTEAD ☞31 — SEPARATE PARCELS — INTENT OF OWNER.

Under Const. art. 16, § 51, the right of homestead in disconnected tracts of land depends on the actual use made of the land, and in determining the homestead character the intent of the owner as evinced by his declarations negativing homestead quality are not to be considered.

3. HOMESTEAD ☞192—PERSONS ENTITLED TO ASSERT RIGHT.

A purchaser of land constituting part of a homestead may, as against one holding a prior deed of trust, assert that the land constituted a homestead, and that the deed of trust was invalid under Const. art. 16, § 50; the right to make such assertion not being personal to the owner of the homestead.

4. HOMESTEAD ☞122 — ESTOPPEL OF PURCHASER—PRIOR LIENS.

A purchaser of land constituting part of a homestead is not estopped to deny the validity of a prior deed of trust thereon which was invalid under Const. art. 16, § 50.

5. HOMESTEAD ☞128 — LIABILITY OF PURCHASER—ASSUMPTION OF PAYMENT OF INVALID DEED OF TRUST.

If a purchaser of land constituting a homestead agrees to pay a prior deed of trust thereon as a part of the consideration of the conveyance, he is liable to the mortgagee for the amount due on the deed of trust, though the lien created thereby is void under Const. art. 16, § 50.

Jenkins, J., dissenting in part.

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Suit by the Rice-Stix Dry Goods Company against J. F. Gulledge, the First National Bank of McGregor, and another. Judgment for plaintiff, and defendant bank appeals. Reversed and remanded.

A. D. Sanford and D. A. Kelley, both of Waco, for appellant.

J. D. Williamson, of Waco, for appellees.

BRADY, J. Appellee, Rice-Stix Dry Goods Company, brought this suit against J. F. Gulledge, J. M. Fox, and the First National Bank of McGregor for debt and foreclosure of lien upon a block of land located in the town of McGregor, McLennan county, Tex. The suit was discontinued as to J. M. Fox, and judgment rendered dismissing him out of the suit. The bank set up that the deed of trust sought to be foreclosed was void, because at the time of its execution it was the homestead of J. F. Gulledge and wife, and

for a long time prior thereto had been used and occupied by them as such. The bank claimed title under a warranty deed executed by Gulledge and wife about two years after the deed of trust was made.

J. F. Gulledge answered, and admitted and adopted the allegations of the plaintiff's petition, including the validity of its lien, and pleaded that, when the deed was made to the bank, it assumed the payment of the plaintiff's debt. Rice-Stix Dry Goods Company, by supplemental petition, pleaded that the bank had assumed its debt and agreed to discharge the lien, and was estopped from attacking its lien, and also that the consideration for the deed to the bank had failed.

The trial was without a jury, and the court rendered judgment for Rice-Stix Dry Goods Company against Gulledge for its debt, with foreclosure of lien upon the property as against Gulledge and wife and the bank.

The evidence shows that Gulledge and wife had owned block 1, the property in controversy, about 20 years before the deed of trust was given, and also owned and occupied the property used as a residence, located on the northeast corner of North Sixth and Van Buren streets, in the town of McGregor, Tex., and that they continued to occupy as their home the same property which they had occupied before the execution of the mortgage. This property was situated diagonally across Sixth street, and about 100 feet from the property covered by the deed of trust. The latter had no buildings or improvements upon it, but was fenced. It is a town block, about 300 feet square, and at the time the deed of trust was executed was being used to pasture a buggy horse and milk cow belonging to Gulledge and wife. The barn was situated on the home place, but the lot in question had been used for years for the purpose of pasturing the horse and cow. The home place has a seven-room house, bathroom, barn, two outhouses, a garage, and a chicken house. The property in controversy continued to be used for pasturing the cow and horse after the execution of the deed of trust; and Mrs. Gulledge testified that it was used just as it has been before, but that she did not think they had anything in there since 1916. Mrs. Gulledge further testified that they had never lived upon block 1 of the Gulledge addition as their homestead, and never claimed it as a homestead, and did not claim it as a part of their homestead when the deed of trust was given; that it was her understanding that when the bank took the deed to the property it was to credit $500 upon the indebtedness of her husband to the bank, and was to pay off and satisfy the debt due Rice-Stix Dry Goods Company secured by the deed of trust. The deed recited a consideration of $1,500.

She further stated that she would never have signed the deed if she had known the bank was not going to pay off the debt of Rice-Stix Dry Goods Company.

The testimony of the cashier who represented the bank in the transaction was that Gulledge and wife had used block 1 as a pasture for their buggy horse and milk cow for some time prior to the execution of the deed of trust, and that he frequently saw both the cow and horse in the lot, and that it was used for the same purpose afterwards. He placed the value of this block of ground at about $2,000 at the date of the deed of trust. He further testified that when the deed to the bank was executed in the spring of 1916, Gulledge owed the bank several thousand dollars, and that the property was conveyed for the purpose of satisfying the indebtedness to the extent of $500; that at the time the deed was executed he had heard of the mortgage of Rice-Stix Dry Goods Company, but did not know whether it was valid or not; that Gulledge may have told him at the time, but that he made no agreement or admission that the deed of trust was valid, nor any agreement with Gulledge that the bank was to assume or pay off the Rice-Stix Dry Goods Company's debt; that he agreed to give Gulledge credit for $500 on the bank's claim, knowing that there would likely be a contest over the deed of trust; and that the bank would probably have to spend more than $500 to get the property.

J. F. Gulledge testified that at the time he executed the deed of trust he had not claimed and did not claim the property covered by it as any part of his homestead, and that he had stated that positively time and again; that he had so stated at the time he executed the trust deed; that he informed the cashier of the existence of the lien of Rice-Stix Dry Goods Company before the deed was taken, and explained to him that it would have to be paid; that he could not say the cashier agreed that the bank would pay the debt of the dry goods company, but that he so understood it, and that he felt that the bank would credit him with $500 and pay off the debt; that he would not have conveyed the property to the bank for the sum of $500; that at one time there had been fruit trees on the block in question, and that he had gathered fruit there for himself and family, and had planted some shade trees around it; that he was using it for pasturing his buggy horse and family cow at the time the deed of trust was given, and for a short time afterwards; that he had no other place for pasturing the horse or cow; and that he did not use it as a pasturage for the public. He further stated that he did not pasture the horse and cow every day, but at such times as there was grass upon it; that he sometimes sowed grain there during a part of the year, and

there would be grass on it; that he never offered this block for sale, and that it might have been some inducement to hold it for use in connection with the home place as pasturage for his horse and cow, because they had no other pasturage to amount to anything.

Appellant's assignments of error are to the effect that the court erred in foreclosing the lien of Rice-Stix Dry Goods Company, because at the time of the execution of the deed of trust the property was the homestead of Gulledge and wife, and not subject to the lien; that it was beyond the power of Gulledge and his wife to waive the constitutional exemption of the property, or to waive their rights by giving the deed of trust; and, finally, that judgment should have been for the bank under its deed, because the conveyance passed a good title to it, free from the pretended lien of Rice-Stix Dry Goods Company.

Appellees contend that a homestead is not an estate in land, but a mere personal right, and that one having no homestead rights in property cannot assert the homestead rights of another therein, and that the bank cannot in this case attack the validity of the lien sought to be created by the deed of trust. They further claim that the mere use of property detached from the homestead for the purpose of pasturing cattle thereon occasionally, when such property is not claimed as any part of the homestead, and there is no intention to occupy it as a homestead, does not create an exemption of such property, and that the facts in this case do not show the property in dispute to be homestead. It is further claimed that by the representations of Gulledge and wife they and their vendee, the bank, are estopped to claim homestead rights in the premises, and that, the bank having obtained property worth $2,000 for the sum of $500, it being intended that the property should be security for the payment of the $1,500 debt and lien originally given Rice-Stix Dry Goods Company, it is estopped by its acts and conduct from contesting such lien.

Before announcing our conclusions, we shall state the constitutional provisions and the principles announced in some of the decisions in this state, upon which we think the question of homestead in this case must turn.

Section 50, art. 16, of the Constitution provides that:

" * * * No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon. * * * "

Section 51 of the same article provides that:

" * * * The homestead in a city, town or village, shall consist of lot or lots, not to exceed in value five thousand dollars at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of the family."

It is settled by the decisions in this state that the homestead exemption is not restricted to the lot or lots upon which the family residence and appurtenances are situated, but it extends to property used for the purposes of a home. The lots may be either connected or disconnected from each other, and if their uses constitute a beneficial enjoyment of the home, they are protected as a part of the homestead. Pryor v. Stone, 19 Tex. 373, 70 Am. Dec. 341; Evans v. Womack, 48 Tex. 232; Medlenka v. Downing, 59 Tex. 39; Anderson v. Sessions, 93 Tex. 279, 51 S. W. 874, 55 S. W. 1133, 77 Am. St. Rep. 873.

In Rock Island Plow Co. v. Alten, 102 Tex. 368, 116 S. W. 1145, Justice Brown said:

"For the residence, or family homestead, it is not required that all of the lots should be used as 'the domestic or hearthstone home,' only that they be used 'for the purposes of the home.' For example, the residence of the family might be upon one lot, the garden upon another disconnected from the first, and the third, disconnected from both the others, might be used for the purpose of a horse or cow lot, or other purposes of the home."

In Axer v. Bassett, 63 Tex. 548, it was held that a lot situated 100 yards from the residence lots, and used for a rye and barley patch and to pasture cows and horses, could be claimed as part of the homestead, being used for the purposes of the home.

To the same effect is the case of Anderson v. Sessions, 93 Tex. 279, 51 S. W. 874, 55 S. W. 1133, 77 Am. St. Rep. 873, where a garden lot used to raise fruits and vegetables for the family was held entitled to be considered a part of the residence homestead because of such use, although detached from the residence lots and situated in another part of the town.

Other cases practically to the same effect are Waggener v. Haskell, 89 Tex. 435, 35 S. W. 1; Lacour v. Levy & Co., 49 Tex. Civ. App. 163, 108 S. W. 191; Harrington v. Mayo, 61 Tex. Civ. App. 610, 130 S. W. 651.

It has also been decided that the actual uses to which property is put is satisfactory evidence of the intention to either make it or not make it a part of the homestead. If the lot is used for the convenience of the family, and contributes to the beneficial enjoyment of the home, the actual use will be regarded as evidencing the intention to make same part of the homestead, although it is disconnected from it. Also positive and express declarations of both husband and wife to the contrary are not sufficient to

change the homestead character or exclude the homestead protection where the property is actually used for purposes of the home. Ruhl v. Kauffman, 65 Tex. 734; Tex. Land & Loan Co. v. Blalock, 76 Tex. 89, 13 S. W. 12; Ross v. Lister, 14 Tex. 469; Kempner v. Comer, 73 Tex. 203, 11 S. W. 194. Some of the cases have even gone so far as to hold that where land is in actual use as a part of the homestead, declarations of the husband to the contrary are not admissible in evidence. See Rose v. Blankenship (Sup.) 18 S. W. 102.

In Land & Loan Co. v. Blalock, supra, Chief Justice Stayton said:

"The Constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife made orally or in writing contrary to the fact. To hold otherwise would practically derogate the Constitution. If property be homestead in fact and law, lenders must understand that liens cannot be fixed upon it, and the declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead contrary to the fact will enable parties to evade the law and incumber homesteads, with liens forbidden by the Constitution."

[1] In view of the above constitutional provisions, and applying the principles and holdings of the above cases to the present case, we have reached the conclusion that it is shown by practically the undisputed evidence in the record that, at the time the deed of trust was given to the Rice-Stix Dry Goods Company by J. F. Gulledge and wife, the lot in controversy was in fact and in law a part of their homestead. The uncontradicted evidence is to the effect that for many years prior to the execution of the trust deed Gulledge and wife had used this block of ground for the convenience of the family, and as an adjunct to their home, it being used solely for the purposes of raising fruit' for the family, or as pasturage for their buggy horse and the family cow. The latter use, while not daily, was not casual and occasional, but was frequent. The lot was inclosed by a picket fence, and the use was not surreptitious, but was open and visible, and was existing at the time the deed of trust was executed and for some time thereafter, as shown, not only by the testimony of the cashier of the bank, but also by that of Gulledge and his wife. It is true that both of the latter testified that they had never claimed this block as part of their homestead, and that Gulledge testified that he had stated this positively a number of times, and did so at the time of the creation of the mortgage. These declarations, however, in our opinion, cannot be given the effect to change the homestead character and destroy the constitutional exemption contrary to the fact. The use made of the premises impressed the homestead character, and while it is true that mere use, not coupled with intention to make the property homestead, would not suffice to designate it as a part of the home, yet there is nothing in the evidence to override the intention manifested by the actual use of the property. The mere statement of the owners that they had never claimed and did not intend to claim the exemption could not operate to defeat the results of the constitutional inhibition.

[2] The Constitution declares that no mortgage upon the homestead shall ever be valid, except for certain specified purposes; and, as was said in Inge v. Cain, 65 Tex. 79:

"What cannot 'ever be valid' is never valid, and what is never valid is always void."

The property being homestead by force of the use to which it was subjected, the deed of trust must be held invalid in the absence of more satisfactory evidence of no intention to make this particular lot part of the homestead, and it was beyond the power of Gulledge and wife to breathe life into it, or give it validity by their mere declarations alone that they did not intend to claim the constitutional protection. If the evidence shall be the same upon another trial, the property should be held to be homestead.

[3] It is urged by appellees that the homestead exemption is a mere personal right or privilege, and inures only to the benefit of the owners of the homestead, and that a vendee cannot assert the homestead right or attack the validity of a lien attempted to be created by the owners, where such vendee does not himself enjoy the homestead use, and that the bank should not be permitted in this case to do so.

We think the contention inadmissible. If the deed of trust was invalid, it created no lien upon the property in question; and, it being admitted that the bank acquired title by warranty deed, we see no reason, either in law or equity, to prevent the bank from attacking the validity of the lien, merely because it did not own the property when the deed of trust was given. Rice-Stix Dry Goods Company derives its sole interest in and rights to this property by virtue of the deed of trust, and, if that be invalid, it is not entitled to foreclose it against the property conveyed to the bank, unless the latter is precluded from attacking the lien by the agreement and understanding made and reached when it took the deed to the lot.

[4] There is a further claim by appellees that the bank acquired the property subject to a valid lien upon it for $1,500 in favor of

Rice-Stix Dry Goods Company, and, having acquired the property for only $500, it being worth $2,000, and not having satisfied the debt thereon, it is estopped to set up the homestead character of the property, or to attack the validity of the lien.

In so far as the question of estoppel is concerned, we think the contention must be denied. Under the present state of the evidence we find no place for the application of the doctrine of estoppel. The bank acquired its rights by deed nearly two years after the deed of trust was executed, and certainly did nothing to induce Rice-Stix Dry Goods Company to take the deed of trust as security for its debt, nor anything to change its position for the worse. Many, if not all, of the necessary elements of estoppel are lacking, according to the facts shown in the record.

[5] However, within the issues made by the pleadings and the evidence in this case is the claim that, when the deed was made to the bank, it agreed to pay off and satisfy the debt of Rice-Stix Dry Goods Company, and to discharge the lien sought to be created on the property; and it was alleged, and there is testimony tending to show, that such was the agreement and the principal part of the consideration upon which the deed was made. The case was tried without a jury, and the trial court did not make any findings in the judgment, nor did the trial judge file any findings of fact or conclusions of law. Therefore we are unable to determine upon what theory the trial court acted in foreclosing the lien upon the land as against the bank.

The evidence upon the issue last named is in a very unsatisfactory condition. Mrs. Gulledge in her testimony makes it clear that it was her understanding that the bank would credit her husband with $500 on his indebtedness to it, and would also pay off and satisfy the debt due Rice-Stix Dry Goods Company and the lien against block 1, that these facts were represented to her at the time she signed the deed, and that she would not have executed the conveyance or acknowledged it but for this understanding. However, she did not positively state by whom these representations were made, nor how she reached the understanding just stated. The testimony of Mr. Gulledge is also uncertain as to the actual agreement made, although clear as to the understanding he had with the cashier of the bank. The latter denied any agreement that the bank should pay off and discharge the debt, or recognize the lien of Rice-Stix Dry Goods Company.

Now, while it is believed that the doctrine of estoppel does not apply in this case under the existing state of the record, yet it is clear that, upon the plainest principles of justice, the bank cannot be permitted to take property worth $2,000 for the sum of $500, if part consideration for the conveyance was the agreement and undertaking to pay off the debt of another creditor and discharge its lien. Common honesty demands that, if the bank desires to enjoy the benefits of the deed to the property, it should perform its contract and obligation as made, although it was not to pay off the debt of the grantor, but that of another party.

Our Supreme Court, in the case of Spann v. Cochran and Ewing, 63 Tex. 240, announced the principle that, where a debtor and a third person for a valuable consideration agree that the latter shall pay the debt of another, the contract gives to the creditor a cause of action on which he may sue and recover from the person who has so contracted to pay him a debt originally due only by the person to whom the promise is made. This ruling has been followed by numerous decisions since, and seems to us applicable to this case under the pleadings; and if the evidence on another trial should satisfactorily establish such an agreement and undertaking upon the part of the bank, its liability should be enforced in favor, not only of Gulledge, but also for the benefit of Rice-Stix Dry Goods Company, the creditor. The justice of this case will not be reached until the issues are disposed of in such manner as that the parties will be made to respect and discharge their respective obligations arising out of the several transactions. It is for this reason that we have decided to remand this case for another trial in accordance with rules of law above announced.

The case is reversed and remanded.

Reversed and remanded.

JENKINS, J. (dissenting in part). I concur in the disposition made of this case, but am not prepared to indorse all that is said in the opinion in reference to the lot involved being a part of the homestead of Gulledge and wife.