MORRIS et al. v. SIMMONS et al.

(Court of Civil Appeals of Texas. Texarkana. May 18, 1911. Rehearing Denied June 15, 1911.)

1. CANCELLATION OF INSTRUMENTS (§ 39*)—PLEADING—CONSIDERATION.

In a suit to cancel a trust deed and a conveyance executed on foreclosure thereof, on the ground that the property was homestead, an allegation in the answer that the trust deed was given to secure the purchase price of certain furniture sold by the beneficiary to the grantor was not objectionable, in that the existence of the debt was immaterial, the consideration for the deed being one of the facts on which defendants relied to their title, unless the property at the time was homestead.

[Ed. Note.—For other cases, see Cancellation of Instruments, Dec. Dig. § 39.*]

2. APPEAL AND ERROR (§ 548*)—RULINGS ON EVIDENCE—BILLS OF EXCEPTION—NECESSITY.

Error in the reception of evidence cannot be reviewed, where the record contains no bills of exception thereto.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2433–2440; Dec. Dig. § 548.*]

3. HOMESTEAD (§ 57½*)—EXISTENCE OF HOMESTEAD—QUESTION FOR JURY.

In a suit to set aside a deed of trust and a conveyance on foreclosure thereof, on the theory that the land was homestead, whether plaintiff intended in good faith to occupy the land as a homestead at the time the deed of trust was executed held for the jury.

[Ed. Note.—For other cases, see Homestead, Dec. Dig. § 57½.*]

4. HOMESTEAD (§ 57*)—EVIDENCE—DECLARATIONS OF HUSBAND.

Where land was not actually occupied as a homestead at the time a deed of trust was executed thereon, the husband's declarations as to whether the land was homestead were admissible as showing the intent of the parties with reference to the homestead character of the land.

[Ed. Note.—For other cases, see Homestead, Dec. Dig. § 57.*]

5. MORTGAGES (§ 353*) — DEED OF TRUST — FORECLOSURE—NOTICE OF SALE.

Sayles' Ann. Civ. St. 1897, art. 2369, provides that all sales of real estate, under powers conferred by any deed of trust or other contract lien, shall be made in the county where the real estate is situated, and that notice shall be given as required in judicial sales. Held that, since no notice is required to be given to the defendant on a judicial sale of real estate, an instruction, in an action to set aside a conveyance pursuant to a foreclosure of the trust deed, directing a verdict for plaintiffs in case the

jury found that the grantor in the deed was not notified of the sale, was properly refused.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1050; Dec. Dig. § 353.*]

Appeal from District Court, Denton County; Clem B. Potter, Judge.

Action by O. M. Morris and others against C. M. Simmons and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

T. B. Ridgell, for appellants. Hopkins & Milliken and E. C. Smith, for appellees.

HODGES, J. The appellants, O. M. Morris and Maud M. Morris, plaintiffs below, claiming to be the owners and in possession of a tract of land consisting of 120 acres situated in Denton county, instituted this suit against Simmons and McCullar for the purpose of procuring the cancellation of a deed of trust and a deed of conveyance made by virtue of a sale thereunder. The petition alleges that the plaintiffs are the owners and in possession of the land, which is fully described; and that it is the only land owned by them; that it is now, and has been since the date of its purchase, their homestead. It is further alleged that the appellee Simmons is claiming ownership of the land by virtue of a certain trustee's deed from one A. P. Duggan; that Duggan had theretofore sold the land under and by virtue of a certain deed of trust naming him as trustee, executed by one of the appellants, O. M. Morris, to secure an indebtedness to Simmons in the sum of $1,500. It is also alleged that the deed of trust was void because the land was at the time of its execution the homestead of the plaintiffs; and that the sale thereunder made by the trustee, and his deed thereafter conveying title to the purchaser, were for the same reason void and constituted a cloud upon plaintiffs' title. The prayer of the petition was for the cancellation of the deed of trust and the deed of conveyance subsequently made by virtue of the trustee's sale. Simmons, one of the appellees, answered by general and special exceptions and general denial. McCullar, who appears to be the party now claiming title to the land, after a general denial, answered setting up a deed executed by Morris conveying the land in trust to Duggan to secure an indebtedness of $1,500 to Simmons, a sale thereunder by the trustee, a deed to Simmons, and the subsequent purchase by McCullar from Simmons. To this answer the appellants replied by a supplemental petition, pleading in detail the facts upon which they relied to support their homestead claim and to show the invalidity of the trust deed. Upon a trial before a jury a verdict was rendered in favor of the defendants, from which the plaintiffs have appealed.

[1] The first assignment of error complains of the refusal of the court to sustain the following special exception: "The plaintiffs specially except to all of the allegations which allege that the said Simmons owned a stock of furniture, and that he sold same to plaintiff Morris for $1,500, and that the said deed of trust was given to secure same, because said allegations are immaterial in this cause and are prejudicial to plaintiffs, and because the question of the debt is not in issue, but only the issue of homestead, and said allegations are improper." We do not think the allegations referred to were subject to the exception interposed. Those facts constituted the basis upon which the defendants in the suit relied to support the title which they asserted, and constituted a good defense unless the property was at the time the homestead of appellants. According to the facts alleged, Simmons sold to Morris a lot of furniture, for which Morris executed a note for $1,500 and at the same time gave the deed of trust here referred to upon the tract of land now claimed as his homestead. A sale under that deed of trust was subsequently made, at which Simmons purchased the land. The issue of homestead was one of fact to be determined by the evidence.

[2] The second and third assignments complain of the introduction of certain testimony and of the refusal of the court to strike same out upon motion of the plaintiffs at the conclusion of the evidence. The record contains no bills of exception to the ruling of the court upon those questions, and the objections will not here be considered.

[3] Complaint is made of the following portion of the court's charge:

"The plaintiffs claim in this case that said deed of trust was void because the property in controversy was the homestead of the plaintiff and his wife at the time of the execution of said mortgage. Now, if you believe from the evidence that at the time of the execution of the deed of trust the plaintiff then intended to make said 120 acres of land his homestead, you will say by your verdict that you find for the plaintiffs.

"Unless the plaintiff had an intention at the time of the execution of said deed of trust to make said 120 acres of land his home, you will say by your verdict that you find for the defendants."

The objection to this portion of the charge probably presents the principal question relied upon for a reversal of this judgment. The facts show that prior to 1908 the appellants owned 160 acres of land situated in Denton county, upon which they resided as their homestead. Some time during the year 1907, or in the early part of 1908, their dwelling was destroyed by fire; but they resided in that community and undertook to rebuild their residence for the purpose of occupancy. Before its completion, however,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

on the 14th day of February, 1908, they exchanged the 160 acres of land, their homestead, for the land here involved. On the same day, and within a short time after the deeds were made, the appellant O. M. Morris executed a deed of trust by which he conveyed the 120 acres of land that day acquired in exchange for the former homestead, to A. P. Duggan as trustee, to secure an indebtedness amounting to $1,500 due to the appellee Simmons. It appears from the testimony of both Morris and Simmons that at that time they reached an agreement as to the sale of a lot of furniture by Simmons to Morris, with reference to which they had previously been negotiating. As a part of the purchase price of this furniture, Morris gave his note for $1,500 secured by the deed of trust above mentioned. The note was due in 90 days from date. Morris expected, at the time it was executed and the deed of trust was given, to pay the note with funds to be procured on a loan from parties in Dallas; and made application therefor. In his application it was recited that the land in controversy was not his homestead. Morris admits that he had never occupied the land, and fails to testify that he had at the time it was acquired any intention of doing so. He says the land had a small tenant house situated on it, which needed considerable repairing before it was suitable for his occupancy. He further testified that he rented a part of this land to a man by the name of Geen, who resided upon an adjoining tract; that Geen had placed a tenant in the only house situated on the land in controversy; and that the tenant continued to hold the occupancy of the house for several months thereafter. It is also shown by the testimony that Morris took charge of the furniture soon after its purchase, shipped it to Rockwall, and did not return to the premises for a month or more thereafter, and when he did it was for the purpose of making some repairs on the fencing around the land. The testimony is conflicting as to the representations made by him at the time he executed the deed of trust. Both Duggan and Simmons testified that Morris stated that the land in controversy was not his homestead; that he had never occupied it; that his home was on a lot situated in Rockwall. Morris, while not explicitly denying those statements in full, says that he does not remember having made them. It is also shown that in the deed of trust executed by him he expressly disclaims any homestead rights in the property. It is contended by the appellants that upon this state of facts they were entitled to a verdict sustaining their homestead claim, even though Morris had made the statements attributed to him regarding his homestead rights. They rely upon the doctrine laid down in Medlenka v. Downing, 59 Tex. 40, where it is held that the declarations of the husband as to the charac-

ter of the property secured by the mortgage were properly disregarded if in fact the property was the homestead at the time; that the mere declaration of the husband to the contrary could not make it that which it was not in fact.

[4] In Jacobs, Bernheim & Co. v. Hawkins, 63 Tex. 1, the court refers to that case, and says: "In cases in which property has not been used as a homestead, or is not so used, the declarations of a husband would seem to be admissible for the purpose of showing that there was no intention so to use it as to make it the homestead; and this would seem to be true where a place formerly used as a homestead is not longer occupied, and so for the purpose of indicating an intention never again to use it, which, coupled with the act of removal, would amount to an abandonment. But, where in fact the property is actually in use for homestead purposes, neither the declarations of the husband or wife, or both, can change its character." In this case the testimony makes it clear that the property was not in use as a homestead at the time the mortgage was given; and whether or not it was intended as a homestead was a question of fact to be determined by the jury from the evidence. The mere fact that the land was taken by Morris in exchange for other land which he had occupied as a homestead did not of itself, in the absence of proof of occupancy or of an intention to use or occupy it as a home, necessarily impress it with the homestead character. It is true that this manner of acquiring the title would entitle him and his wife to the right of asserting a homestead claim therein in advance of occupancy, provided they had shown a bona fide intention at that time to so use it. But, unless they then had such an intention, they cannot now, under the facts in evidence, claim that it was their homestead. Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832. In the case cited Justice Brown says: "Intention cannot give a homestead right; but it is at the same time equally true that all other things combined cannot give it without the intention to dedicate to the uses of a home. Valuable and costly improvements, coupled with long and continued possession, without the existence of a bona fide intention to make it a home, will not make it such." The charge given and complained of was certainly as liberal as the appellants were entitled to. Their homestead rights were made to depend upon their bare intent to use the property as a home at that time, whether this intent were fraudulently suppressed or not in the dealings with Simmons. It is true that the evidence indicates a subsequent occupancy of the premises, or an intention by Morris and his family to so use and occupy them. This, however, would not affect a pre-existing lien executed at a time when the land had not in fact been dedicated as a homestead. Wat-

son v. City National Bank, 119 S. W. 915.

There are several assignments complaining of the refusal of the court to give special charges requested by the appellants. The only one of those which we deem it necessary to discuss is the following: "You are instructed that if you believe from the evidence that the trustee, Duggan, did not post a notice of sale in three public places, or if you believe that he failed to notify the plaintiff O. M. Morris of said sale and the time of same, and if you further believe that the consideration for said sale at the time was not reasonable, taking in consideration the value of the property at that time, then you are instructed that said sale and deed thereunder would be void, and it would be your duty to so say by your verdict." When appellants sought a judgment canceling the deed of trust and the deed of conveyance made by virtue of the sale under that instrument, they assumed the burden of establishing facts that would establish the invalidity of those instruments and proceedings. It may be conceded that a failure to comply with the law with reference to the sale of real estate would vitiate the sale and render void any conveyance made thereunder. Article 2369 of the Revised Civil Statutes of 1897 provides that: "All sales of real estate made in this state under powers conferred by any deed of trust or other contract lien shall be made in the county in which such real estate is situated. Notice shall be given as now required in judicial sales, and such sales shall be made at public vendue between the hours of ten o'clock a. m. and four o'clock p. m. of the first Tuesday in any month." This deed of trust provided that in case of default the trustee should "sell the said property at public auction for cash at the door of the county courthouse in Denton county, Texas, after having given notice of the time and place of such sale, as now prescribed by the statutes of the state of Texas in making sales under deeds of trust," etc. The deed of trust also contained this further clause: "It is further specially agreed by the parties hereto that in any deed or deeds given by any trustee or substitute duly appointed hereunder any and all statements of facts or other recitals therein made as to the nonpayment of money secured, or as to the request to sell, the time, place, terms of sale, and property to be sold having been published, or as to any other act or thing having been duly done by any trustee or substitute, shall be taken by any and all courts of law and equity as prima facie evidence that said statements or recitals do state facts and are without further question to be accepted." The deed from Duggan to Simmons recites the sale of the land was made "between the hours of ten o'clock a. m. and four o'clock p. m. on the 3d day of November, 1908, after having

given notice of the time, place, and terms of said sale by posting three written notices of such sale in three public places in said Denton county; one at the courthouse door, one in the town of Lewisville, and the other in the town of Pilot Point; said notice posted twenty days before said sale, as required by law and the terms of said deed of trust," etc. Duggan, the trustee, testified on his direct examination that the land was advertised and sold according to the terms of the trust deed, and that Simmons became the purchaser. On cross-examination he testified as follows: "I think the notices were prepared by Mr. Gambrell, an attorney here. I posted the one at the courthouse, and sent the other two to be posted; one of them went to Pilot Point, and one to Lewisville. I didn't post them myself. I only know of my own knowledge that the one in the courthouse was posted." The testimony referred to is the only evidence that raises the issue as to whether or not the notices had been posted according to law. We doubt the sufficiency of this evidence to raise that issue and require its submission to the jury.

[5] If, however, it should be held sufficient, there is another reason that justified the refusal of this charge. It will be observed that it requires a finding in favor of the plaintiffs if "Morris was not notified of the sale." The article of the statute before referred to was enacted in 1889. At that time notice to the defendant in execution sales was not required by law to be given. We think the following cases determine that question adversely to the appellants: Fischer v. Simon, 95 Tex. 234, 66 S. W. 447, 882; Swain v. Mitchell, 27 Tex. Civ. App. 62, 66 S. W. 61. The principle involved is there fully discussed.

The judgment of the district court is affirmed.