TURRENTINE et ux. v. DOERING.
(No. 359.)

(Court of Civil Appeals of Texas. Beaumont. May 2, 1918. Rehearing Denied May 22, 1918. Additional Findings June 5, 1918.)

1. TRIAL ⟨key⟩140(2)—JURY QUESTION—TESTIMONY OF PARTY.

Where defendants filed an admission of plaintiff's cause of action, except as it might be defeated by facts proven by defendants, and where such facts could not be proven without the tes-

timony of defendants themselves, it was not error to refuse a peremptory instruction for defendants, since the court and jury had the right to disregard their testimony.

**2. HOMESTEAD ⊙⊃181½—ABANDONMENT—INTENTION—QUESTION FOR JURY.**

Intention of mortgagors, with reference to abandonment as a homestead of lot mortgaged, *held* a question for the jury.

**3. HOMESTEAD ⊙⊃177(2)—ESTOPPEL TO CLAIM—REPRESENTATIONS.**

Where plaintiff, in reliance on written and verbal statements of defendants that lot No. 11 alone was their homestead, made a loan secured by a mortgage on lot No. 12, defendants cannot defeat the loan by setting up that lot No. 12 was in fact their homestead, although there was no building thereon, and defendants were living elsewhere when the loan was made.

**4. HOMESTEAD ⊙⊃177(2)—ESTOPPEL TO CLAIM—REPRESENTATIONS.**

Where defendants were not occupying lots Nos. 11 and 12, or in such physical possession thereof as would give notice of the homestead character, plaintiff could safely, in making a loan to defendants secured by a mortgage on lot No. 12, rely on their statements as to their intention to make lot No. 11 their sole homestead.

**5. APPEAL AND ERROR ⊙⊃994(2)—REVIEW—CREDIBILITY OF WITNESSES—VERDICT.**

Where defendants had to rely upon their own testimony to establish their defense, the jury was entitled to pass upon the weight and value of the testimony, and the court on appeal will not disturb their verdict.

**6. APPEAL AND ERROR ⊙⊃1068(2)—INSTRUCTIONS—HARMLESS ERROR.**

Where jury found that plaintiff in making loan believed and acted upon defendants' statements in written designation that lot mortgaged to secure loan was not a homestead, instructing in response to request of jury that a designation of a homestead is a legal procedure, was without prejudice, it being immaterial whether designation was a subterfuge.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by C. A. Doering against R. E. Turrentine and wife. Judgment for plaintiff, and defendants appeal. Affirmed.

Cole & Cole, of Houston, for appellants. Stewarts, of Houston, for appellee.

BROOKE, J. Appellee's cause of action was based on a promissory note for $1,000, secured by a mortgage on lot 12. Lots 11 and 12 were adjoining, and appellants had, about six weeks prior to the execution of the mortgage, lived on lot 11, and had a garden on lot No. 12. Their house burned, and they removed to another neighborhood. They decided to sell said lots, and went to Mr. Fuchs for that purpose, and on inquiry he was told by Fuchs that, while there was no sale for them, they might get a loan. Fuchs produced appellee, who made the loan on the representation in writing by appellants that lot No. 12 was not their homestead. Appellee believed and relied on the truth of said statement and designation or would not have made the loan. There was no evidence that any improvements had been made on lot 12 after the fire and prior to the mortgage. All the evidence indicates that any improvements made on said lots after the first removal were made after the execution of the mortgage. Appellants were not living on either of lots 11 and 12 at the time the mortgage was given. The written statement relied on by appellee was as follows:

"The State of Texas, County of Harris.

"Know all men by these presents that we, R. E. Turrentine and Emma F. Turrentine, husband and wife, both of Harris county, Texas, being the owners of the hereinafter described tract or parcel of land, in Harris county, Texas, and being desirous of establishing and setting aside certain property as and for a homestead, and as constituting all the property and premises which we can claim as exempt under the homestead laws of the state of Texas, do hereby designate the hereinafter described land and premises as and for such homestead, hereby signifying our intention to use such property as a homestead, and hereby renouncing all homestead rights in and to all other property owned by us, and not herein expressly designated as such homestead.

"The property herein designated as such homestead is described as follows, to wit: Lot No. eleven (11) in block two hundred and ninety-one (291), in that certain tract or parcel of land regularly platted and recorded and known as Houston Heights, an addition near the city of Houston, on the north side of Buffalo bayou, in Harris county, Texas.

"In witness whereof we have hereunto subscribed our names at Houston, Texas, this 28th day of October, A. D. 1914."

This instrument was duly signed and acknowledged by appellant and his wife.

On the trial of the cause appellee's cause of action was admitted by appellants, except in so far as it might be defeated by matters pleaded by appellants. Appellants contended that the mortgage was void, because, notwithstanding the fact that they were living elsewhere, and had, for the purpose of inducing appellee to make the loan, designated lot No. 11 only as their homestead, and that appellee believed and relied on same, that the law made lot No. 12 their homestead.

Appellee contended that after the fire appellants could claim both lots as their homestead if they desired to do so, or they could abandon both or one. It had then become simply a matter of their intention or· election, and the public must judge of such intention by the best evidence obtainable, to wit, their statements; that as long as they were not occupying it or in such physical possession as would notify a purchaser of the homestead character of their intentions, if any, the purchaser could safely rely on their statements as to their intentions to make the property their homestead or continue the same as their homestead or not; that at the time of the loan there was no such physical possession as would notify the lender of their intention to remove to same, or continue to claim same as their homestead, in view of the fact that they were trying to sell the whole, and made statements that lot No. 12 was not their homestead, and no improvements were made between the time of the fire and the making of the loan; that, under the physical conditions shown, the lender had the right to believe and rely on the state-

ments of the appellee to the effect that lot 12 was not their homestead, and he did believe and rely on same.

The cause was submitted to the jury on special issues as follows:

"Special Issue No. 1: At the time the plaintiff made the loan to the defendants herein, was lots 11 and 12, in block 291, Houston Heights, combined, the homestead of said defendants, or was lot 11 in said block the homestead of said defendants?

"You will let your answer be either 'Lots 11 and 12, in block 291, Houston Heights, combined, was the homestead of defendants at said time,' or 'Lot No. 11, in block 291, Houston Heights, was the homestead at said time,' as you may find the facts to be.

"If in answer to the foregoing issue you state that lot No. 11 only, in block 291, Houston Heights, was the homestead of the defendants at the time of the loan to them, then you need not answer the succeeding one; but if in answer to said issue you state that lots 11 and 12, in block 291, combined, Houston Heights, was the homestead of defendants at said time, then state in answer to said—

"Special Issue No. 2: Had defendants abandoned lot 12 as part of their said homestead at the time the loan was made to them by the plaintiff?

"You will let your answer be either 'They had' or 'They had not,' as you may find the facts to be.

"Special Issue No. 3: Did the plaintiff herein believe the statements made by the defendants in their written designation of lot No. 11; in block 291, Houston Heights, as their homestead, and rely on the truth of same in making the loan to the defendants?

"You will answer same either 'He did' or 'He did not,' as you may find the facts to be.

"Special Issue No. 4: Would plaintiff have made said loan to defendants had he not believed and relied upon the truth of said statement?

"You will let your answer be either 'He would' or 'He would not,' as you may find the facts to be.

"Special Issue No. 5: Would the plaintiff have made said loan to the defendants if the Stewart Title & Guaranty Company had not executed its guaranty with reference to this title?

"You will let your answer be 'He would' or 'He would not,' as you may find the facts to be.

"In connection with the foregoing issues, and especially the one relating to abandonment, you are instructed that the going away from a homestead by the family does not of itself constitute an abandonment thereof, unless same be coupled with an intention upon their part not to return to live upon same or to use it in the future as a home."

To special issue No. 1 the jury answered, "Lot 11."

To special issue No. 3 they answered, "He did;" to No. 4, "He would not;" and to No. 5, "He would."

The following special issue requested by defendants was submitted to the jury, to wit:

"At and prior to the time C. A. Doering accepted and received the notes and deed of trust sued on herein, had he used such diligence as an ordinarily careful and prudent person would have used, under the same or similar circumstances, to ascertain whether or not the premises described in said deed of trust were at the time of the execution of said notes and deed of trust, and at the time same were received and accepted by the said C. A. Doering, the homestead of the defendants (if you should find that said premises at said times was the homestead, or a part of the homestead, of the defendants and claimed by them as such)? Answer 'Yes' or 'No.' "

To this question the jury answered, "Yes."

Plaintiff filed motion to enter judgment in its favor. Defendants filed motion to set aside the verdict and for new trial. Defendants obtained leave to file an amended motion to set aside the verdict and for new trial on April 20, 1917. Plaintiff's motion to enter judgment was granted by the court. The motion to set aside the verdict and for new trial was overruled. The case is now before this court, by proper transfer, for review.

[1] The first assignment of error assails the action of the trial court in overruling and in not granting their motion for a peremptory instruction, "because, under the law and the undisputed evidence, lot No. 12, on which foreclosure was sought herein, was the homestead of these defendants; the reasons for said motion being more fully specified in defendants' bill of exception No. 1."

As appellants, in order to have the opening and closing of the case, filed an admission of appellee's cause of action, except as it might be defeated by facts proven by appellants, and as such allegations could not be proven without testimony of the two appellants, and as the court and jury had the right to disregard their testimony, the court did not err in refusing a peremptory instruction for appellants based on appellants' testimony. We have examined minutely the statement of facts in this case, and the evidence submitted on both sides, and we are of opinion that the question of abandonment is a matter to be submitted to the jury; that the question of their intention to occupy the premises as a homestead is also a question to be submitted to the jury; and, viewing the whole case, we are not able to say that the court was in error in refusing a peremptory instruction. The assignment is therefore overruled.

[2] The second assignment of error is as follows:

"The appellants (defendants below) asserted in their motion for a new trial, as one of the reasons for setting aside the verdict of the jury and the judgment of the court rendered thereon, the following: 'The jury's answer to special issue No. 1, propounded by the court, is wholly unsupported by the evidence, which said issue reads as follows: "At the time the plaintiff made the loan to the defendants herein were lots 11 and 12, in block 291, Houston Heights, combined, the homestead of said defendants, or was lot 11, in said block, the homestead of said defendants?" ' "

The proposition is that where the undisputed evidence showed that the appellants executed a mechanic's lien contract on lots 11 and 12, in block 291, Houston Heights, Tex., for the purpose of constructing a residence for family use in April, 1913, into which they moved in July, 1913, and where they lived until September 13, 1914, when the house was burned by fire, and where during the interim they had been using lot 12 as a

garden, and there had been no dividing fence between lots 11 and 12, and there was a garden fence around lot 12 and a chicken coop on said lot, and where the front of lot 12 formed a part of the front yard of said premises, said property was their homestead as a matter of law, and, there being no evidence to dispute the foregoing facts, the verdict of the jury, to the effect that lot 11 alone was the homestead of the appellants as of October 28, 1914, some six weeks after they left the property because of fire, was wholly unsupported by any evidence, and the court erred to the prejudice of appellants in not setting aside the verdict and the judgment rendered thereon.

On the contrary, it is contended that where two lots have been the homestead, and the owners have removed on account of the destruction of their house by fire, it is then optional with them whether or not they will continue to claim and hold same as their homestead and a matter of their intention, and the public dealing with them may rely on their statements as to their intentions.

As said in the case of Watson et al. v. City National Bank, 56 Tex. Civ. App. 140, 119 S. W. 916:

"The evidence being uncontroverted that, at the time the sale under the deed in trust to Penix was made, appellants were occupying the land as their homestead, on the authority of Stone v. Darnell, 20 Tex. 11, and Griffie v. Maxey, 58 Tex. 211, they insist that the trustee's deed to appellee as the purchaser at such sale did not pass the title to the land. * * * The case cannot be regarded as supporting appellants' contention, because the lien there asserted was a statutory one, while here the lien asserted is predicated upon an express contract. * * * Looking, then, as we must, to the status of the property as it is shown by the record to have been at the time Watson borrowed the money and executed the trust deed, we think it must be held, in accordance with the finding of the trial court, that it was not then the homestead of the family, and therefore that the trust deed was not void. It was not pretended that the land was then, or that it had ever been, occupied by Watson and his family, as their homestead. It was not pretended that he had made, or was then making, any preparation to use it as his homestead, or that he had ever by any overt act manifested an intention to so use it. His right and that of his wife to claim the land then to have been their homestead rests entirely upon evidence tending to show that Watson purchased it for a home, and intended when he secured possession of it to make it his home. Whether he had such an intention or not was an issue in the case. The testimony on the issue was conflicting. The judgment of the trial court involved a finding that he had no such intention. The weight to be given the testimony was for that court to determine; and as we cannot say its finding was not supported by the testimony showing that Watson did not move onto and occupy the land until the latter part of November, 1907, and his declaration in his trust deed that the land was not his homestead, and his declarations to the same effect made to the witnesses Mahaffey and Shelton, as testified to by them, we must regard the finding as binding upon us. An affirmance of the judgment might be rested upon such a view of the record; but there is still another view to be taken of it, which we think leads to the same result. If it should be assumed that Watson intended the land for use as a homestead,

and if it should be conceded that such an intention on his part was sufficient to fix its status as such, * * * we yet would feel ourselves constrained to hold that the evidence in the record was sufficient to support the further finding involved in the judgment that, at the time he executed the trust deed, he had abandoned such intention, and therefore that the judgment did not appear to be erroneous. 'It is well settled,' said the court in Davidson v. Jefferson (Tex. Civ. App.) 68 S. W. 824, 'that where the homestead is not one in fact—that is, where the homestead intention is not attended by the occupancy of the property—the intention may be abandoned or renounced at any time, and the exemption thereby ended, and a mortgage upon the property induced by a disclaimer of such intention is valid.'"

It seems in the instant case that there is no question about the whole of the premises being originally impressed as the homestead of the appellants; that, owning the two lots, they made and executed a mechanic's lien upon both lots, and with this they proceeded to erect on lot No. 11 a home, which was afterwards occupied by them; that on lot No. 12 was a chicken yard, and perhaps a chicken house, and part of a garden. When the fire occurred they removed from the premises and went into a rented house. They thereafter decided to try and have the mechanic's lien rest alone upon lot No. 11— that is, the lot formerly occupied by them as a residence; that when that was accomplished, they proceeded to designate in writing, there being no lien at that time of any kind upon lot No. 12, that lot No. 12 was in truth and fact free from any homestead claims on their part, and that No. 11 was claimed to be their sole exemption for purposes of a homestead. Some time after the fire there was a cross fence erected between the two lots. In order to obtain money they expressly designated their homestead to be on lot No. 11, and not only in writing did they do this, but it is shown that the husband said that No. 11 was in fact and in truth their home, and disclaimed the idea of claiming lot No. 12 as any part of their homestead. Acting upon this written declaration, and acting upon the verbal declaration that it was not their home, the loan was made, and the deed of trust was executed upon lot No. 12. The intention of the parties is the crux of the situation. What did they intend to do when they designated No. 11 as their homestead? It is true they testified that they did not have any intention of abandoning their claim to lot No. 12 as their homestead; nevertheless it is only from their statements, written and verbal, as to their intention as to what they intended to do, that we can pass on the present case. Therefore it was proper for the court to charge the jury, asking them what was the intention of appellants with reference to abandonment, taking into consideration all of the testimony, together with the written declaration of the parties, duly acknowledged. And in this connection it might be well to say that after the fire occurred, after the loan was

made, after these people had the money of appellee, obtained through the faith and credit of their written and verbal statements, that no improvements were made nor any work done, nor anything that would tend to show a purpose on their part to improve or to use any part of No. 12 for homestead or any other purposes. Therefore, the appellants not residing on their home, their house being burned down, there being nothing on lot No. 12 but perhaps a part or all of an old chicken house and the remains of what had been a garden, the appellee had nothing to put him on visible notice that appellants had any intention of again occupying lot No. 12 as a part of their homestead. Moreover, after the fire, there was, as we say, a partition fence between the two lots.

[3] For the purpose of defeating the loan, and the debt made in reliance upon their written and verbal statements, it is too late to claim now that the mortgage was void, because, notwithstanding the fact that they were living elsewhere and had, for the purpose of inducing appellee to make the loan, designated lot No. 11 only as their homestead, for the reason that appellee believed and relied on the same, and was thereby caused to part with his money, as found by the jury. We believe the contention of appellee that after the fire appellants could claim both lots as their homestead, if they desired to do so, or they could abandon both or one; that it was a matter simply of their intention and election. How, therefore, are we to judge of such intention? In our opinion, such intention is best evinced by the best evidence obtainable—that is, by the solemn written declaration of what they intended to do—and that this evidence, together with their verbal statement, was the best evidence obtainable.

[4] We are also of opinion that as long as they were not occupying it, or in such physical possession as would notify a purchaser of the homestead character, that the purchaser could safely rely on their statements as to their intention to make lot No. 11 their sole homestead, and that lot No. 12 was free from any intentions of that kind. At the time of the loan there was no such physical possession, in our opinion, as would notify the lender of their intention to remove to the same, or continue to claim lot No. 12 as any part of their homestead. They were trying to sell the whole of lot No. 11 and lot No. 12. They made the statement, however, that lot No. 11 was their homestead, and claimed such exemption solely to be on that lot. No improvements were made on lot No. 12 between the time of the fire, as before said, and the making of the loan, and, as found by the jury, we are of opinion that the physical conditions show that the lender had the right to believe and to rely upon the statements, written and verbal, of the appellants, to the effect that lot No. 12 was not their homestead; and we are further of

the opinion that he did so believe and rely upon the same. Derry v. Harty, 187 S. W. 343; Farmers' National Bank v. Ivey, 182 S. W. 706; Randleman v. Cargile, 163 S. W. 350; Morris v. Simmons, 138 S. W. 800; Lynch v. McGown, 54 Tex. Civ. App. 390, 117 S. W. 884.

In addition to what has been said, we are of opinion that the court and the jury had the right to disregard the testimony of appellants, if they saw fit, and, as we have before said, the question of abandonment is a question of intention, and a fact for the jury to pass on, and the intention also to return to a vacated homestead is a question for the jury.

[5] As the jury are the sole and exclusive judges of the weight and value of the testimony, and as the test of the evidence was alone that of appellants as to their previous written statements and previous verbal statements, which were contradicted by appellants upon the trial of this case, the jury, therefore, were entitled to pass, these being interested parties, upon what weight and value should be given to their evidence, and, they having decided against the contention of appellants, we do not think that this court is warranted in disturbing their verdict. Therefore the assignment is overruled, together with the third, fourth, fifth, and sixth assignments.

[6] The seventh assignment calls in question the action of the lower court as being prejudicial to the defendants in a special instruction given to the jury in response to the question propounded by the jury while the jury were deliberating, in their retirement, which question propounded by the jury to the court was as follows:

"We would like to know whether or not the designation signed by Mr. and Mrs. Turrentine is a legal procedure;"

—to which the court instructed the jury as follows:

"Gentlemen of the Jury: In response to the question propounded to me through your foreman, you are instructed that while the law of this state makes no provision for a designation of a homestead of the kind in question herein, yet it does not prohibit same, and therefore a designation of a homestead is a legal procedure."

The proposition is that where the principal issue to be determined by the jury was whether or not lot No. 12 was the homestead of the appellants on October 28, 1914, and where the undisputed evidence shows that they had used this property as part of their homestead up to September 13, 1914, when they were forced out of it because of a fire, the character of the use of said lot No. 12 fully appearing from the foregoing divers and sundry propositions and statements, and where the jury had retired to consider of their verdict, propounded to the court through their foreman, the said question, and that the instruction of the court was affirmative error, seriously prejudicial to appellants' rights, and should not have been given by the court over

the timely objection of appellants' counsel, and because it was erroneous, in that the very issue to be passed on by the jury, as made by the pleadings, in this particular case, was whether or not the designation of the homestead, pleaded and introduced by the appellee, was legal, or was a mere subterfuge to evade the homestead law, and the charge of the court amounted in law to a peremptory instruction, to return a verdict on this issue in favor of the appellee.

It is contended, on the contrary, that, as the court answered the jury's question by stating a correct abstract proposition of law, it was not prejudicial to the appellants.

In our opinion, while the court does not tell the jury that there was such designation by appellants, but in effect says that, if there was such, it would not be illegal, it was left to the jury to find out if there was one. The jury found that appellee believed the statements of appellants in the written designation, in answer to special issue No. 3, and that he would not have made the loan if he had not believed same, in answer to special issue No. 4, and, therefore, having found as stated, in our opinion it would be immaterial whether the designation was a subterfuge or not, as the jury found that appellee believed and acted on it in making the loan.

The remaining assignments will be overruled. We believe that no such substantial injustice has been done that we would feel authorized in reversing this cause. We are not unmindful of the many authorities produced by the appellants, but, as said many times in the decisions of the courts of this state, each individual case must rest upon its own merits. The facts in each one of them are different, but, in our opinion, there is always some fact or facts or indication in the record which shows to the diligent inquirer, seeking the real justice of the case, where it lies; and if substantial justice has been meted out, and no injustice such as would require a reversal of the case by the appellate courts, the verdict of the jury or the court below will be affirmed.

Therefore this cause is in all things affirmed.

### Additional Findings.

At the request of the appellants we herewith file the following additional findings of fact:

The lots were 50x150 feet each; lot 12 was the corner lot. We find that, the following spring after the fire and the execution of the mortgage, the garden fence was repaired, and that appellants planted a garden there, and we further find that they also planted a garden there each spring up to the date of the trial, and we further find that the board fence was about half way between the two lots. The front yard was a lawn, not divided by any fence. We further find that appellee knew that the house on the premises had been destroyed by fire, and at least had been told that the appellants lived in the house. The date of the fire was September 13, 1914. We further find that appellants lived in the house until that time, and then moved off, and have not lived on the property since, and while they lived there they used the whole premises for homestead premises.